UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MDL No. 2328

IN RE: POOL PRODUCTS
DISTRIBUTION MARKET ANTITRUST          SECTION: R(2)
LITIGATION

JUDGE VANCE
MAG. JUDGE
WILKINSON

**THIS DOCUMENT RELATES TO ALL CASES**

**PRETRIAL ORDER NO. 15**

In accordance with Pretrial Order No. 5, the parties
submitted to the Court a joint discovery report consisting of a
list of (a) discovery items which they agree to produce, and (b)
discovery requests or issues as to which they disagree, with
reasons for their objections. In the joint discovery report, each
party set out their discovery contentions and identified specific
requests for information and requests for documents that were
subject to disagreement. The Court reviewed direct-purchaser
plaintiffs' 26 requests for discovery from Pool Defendants,
direct-purchaser plaintiffs' 23 requests for discovery from
Manufacturer Defendants, Pool Defendants' 33 categories of
discovery items from direct-purchaser plaintiffs, and
Manufacturer Defendants' 23 interrogatories and 27 requests for
documents from direct-purchaser plaintiffs. The Court held a
discovery conference on Thursday, October 25, 2012, at which the
Court heard from the parties concerning the contested discovery

issues. After hearing from the parties, the Court makes the following discovery rulings.

## I. Background

A brief summary of the underlying claims in this antitrust class action is useful in understanding the disputed issues. PoolCorp is the country's largest distributor of products and parts used for the construction and maintenance of residential and commercial swimming pools. PoolCorp buys Pool Products[1] from manufacturers, including the three manufacturer defendants. Direct-purchaser plaintiffs are pool builders, pool retail stores and pool retail and service and repair companies (collectively "Pool Dealers") that buy Pool Products from distributors and sell to owners of residential and commercial pools. On November 21, 2011, the FTC announced that it had conducted an investigation of unfair methods of competition by PoolCorp and had entered a consent decree with PoolCorp resolving the matter. Shortly after the FTC's announcement, the plaintiffs in this case filed the suits against PoolCorp that have been consolidated for pretrial purposes in this court. Direct and indirect-purchaser plaintiffs subsequently added as defendants Hayward Industries, Inc.,

---

[1] As defined in direct-purchaser plaintiffs' complaint, Pool Products are the equipment, products, parts and materials used from the construction, renovation, maintenance, repair and service of residential and commercial swimming pools.  Pool Products include pumps, filters, covers, drains, fittings, rails, diving boards, and chemicals, among other goods.

Pentair Water Pool and Spa, Inc., and Zodiac Pool Systems, Inc. (collectively "the Manufacturer Defendants"), allegedly the three largest manufacturers of Pool Products in the United States.

Direct-purchaser plaintiffs allege that PoolCorp and the Manufacturer Defendants violated Section 1 of the Sherman Act by conspiring to unlawfully restrain trade by entering into exclusive or restrictive dealing arrangements designed to eliminate competition from PoolCorp's actual and potential competitors. Specifically, plaintiffs allege that PoolCorp entered agreements with Manufacturer Defendants that prevented them from selling to new and existing PoolCorp rivals. Plaintiffs also allege that PoolCorp monopolized and attempted to monopolize the Pool Products distribution market in the United States in violation of Section 2 of the Sherman Act by acquiring rival distributors and engaging in the same exclusionary conduct alleged to violate Section 1. Direct purchasers claim to have suffered damages from defendants' conduct in the form of overcharges they paid for Pool Products. They assert claims on behalf of a class of direct purchasers, defined as "[a]ll persons or entities that purchased Pool Products in the United States directly from PoolCorp...at anytime between August 1, 2002 and the present."[2] Indirect-purchaser plaintiffs have alleged analogous violations of state laws on behalf of classes of

_____

[2] R. Doc. 107 at 27.

individuals and entities who purchased Pool Products "indirectly" and not for resale in Arizona, California, Florida, and Missouri.

Because indirect-purchaser plaintiffs represented that they had no disputes about proposed discovery except for the time period issue discussed below, the focus of this Order is on resolving disputes between the direct-purchaser plaintiffs and the Pool and Manufacturer Defendants.

A. *Elements of Direct Purchasers' Claims*

To prove their case, the direct-purchaser plaintiffs must show not only that the allegedly exclusionary agreements between PoolCorp and the manufacturers existed, but also that they resulted in overcharges for Pool Products, that is, charges that exceeded the charges that would have applied in the absence of such agreements. Plaintiffs' monopolization claim requires proof that PoolCorp possessed monopoly power in the relevant market and has acquired, enhanced, or maintained that power by use of the alleged exclusionary conduct. Plaintiffs' attempted monopolization claim requires proof that PoolCorp had the specific intent to monopolize and that there was a dangerous probability that PoolCorp would succeed in achieving monopoly power in the relevant market. These claims depend on a proper definition of the relevant product market and the relevant geographic market in which PoolCorp operated. Plaintiffs must

also prove that PoolCorp's monopolization and attempted
monopolization resulted in plaintiffs paying supracompetative
prices for Pool Products.


## II. Discovery Standard

In general, parties may obtain discovery regarding any
nonprivileged matter that is relevant to the claim or defense of
any party. Fed.R.Civ.P. 26(b)(1). Relevant information need not
be admissible at trial if the discovery appears reasonably
calculated to lead to the discovery of admissible evidence. *Id.*
The discovery rules are accorded a broad and liberal treatment to
effect their purpose of adequately informing litigants in civil
trials. *Herbert v. Lando*, 441 U.S. 153, 176 (1979). Nevertheless,
discovery does have "ultimate and necessary boundaries,"
*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351
(1978)(quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

> [T]he court must limit the frequency or extent of
> discovery ... if it determines that: (i) the discovery
> sought is unreasonably cumulative or duplicative, or
> can be obtained from some other source that is more
> convenient, less burdensome, or less expensive; (ii)
> the party seeking discovery has had ample opportunity
> to obtain the information by discovery in the action;
> or (iii) the burden or expense of the proposed
> discovery outweighs its likely benefit, considering the
> needs of the case, the amount in controversy, the
> parties' resources, the importance of the issues at
> stake in the action, and the importance of the
> discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2). As the Fifth Circuit has repeatedly instructed, "'[a] district court has broad discretion in all discovery matters, and such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse.'" *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001)(quoting *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000)).

## III. Discussion

*A. Plaintiffs' Requests for Discovery from Defendants*

1. Requests to PoolCorp

a. *Time Period*

Plaintiffs request a 13-year discovery period for non-transactional documents (e.g., emails, memos, and correspondence) of January 1, 1999, to the present. PoolCorp and Manufacturer Defendants seek to limit the time period for non-transactional documents to January 1, 2003, the start date generally used in their productions to the FTC, through November 21, 2011, the date that the FTC announced its complaint against PoolCorp. Defendants contend that producing non-transactional documents from before and after the FTC period would require them to review all hard copy documents a second time, since they have already reviewed them in response to FTC subpoenas and civil investigative demands. Defendants argue that this task would be onerous and

6

unlikely to provide more relevant information. Plaintiffs assert
that the January 1, 1999 start date is necessary because PoolCorp
adopted its Preferred Vendor Program in 1999 and that program is
a cornerstone of their conspiracy allegations. Because documents
pertaining to the Preferred Vendor Program are highly relevant to
plaintiffs' claims, the Court rules that the time period for non-
transactional documents pertaining to the Preferred Vendor
Program is January 1, 1999 to June 1, 2012. The Court further
holds that the time period for all other non-transactional data
is January 1, 2000 to June 1, 2012. That defendants will have to
review files that they already reviewed for the FTC does not
convince the Court that the time period is unduly burdensome, nor
does the FTC discovery period operate as a legal limit in this
suit. *Sam Fox Pub. Co. v. United States*, 366 U.S. 683, 690 (1961)
("just as the Government is not bound by private antitrust
litigation to which it is a stranger, so private parties,
similarly situated, are not bound by government litigation"). The
January 1, 2000, start date is consistent with the parties'
agreement to maintain and preserve documents and ESI created
after that date[3], and the Court ordered initial disclosures which
go back to that date.[4] Defendants, for the most part, do not
challenge the types of non-transactional information plaintiffs

---

[3] R. Doc. 114 at 4.

[4] R. Doc. 93 at 3.

request. To the extent that they do, the Court addresses these concerns later in this Order.

The plaintiffs request discovery of transactional data, such as purchase and sales information and cost data, from a longer period: January 1, 1995 to the present. Plaintiffs justify their proposed period as necessary to provide a possible benchmark period before and after the alleged violations as a basis to calculate the impact of the violations and the overcharge damages sustained. The Court finds that the plaintiffs' proposed period is overly broad and holds that transactional documents are to be produced from January 1, 1998, to June 1, 2012. This time period provides a reasonable time frame for plaintiffs to conduct a before and/or after analysis. *See Centeno Supermarkets, Inc. v. H.E. Butt Grocery Co.*, SA-83-CA-72, 1987 WL 42402 (W.D. Tex. 1987)(allowing discovery from two years before alleged pricing scheme to provide background information on the scheme and to demonstrate changes in defendant's pricing strategy).

b. *Diaries, Calendars, and Expense Reports*

Plaintiffs request expense reports, calendars, diaries and phone records for witnesses identified in Pool Defendants' mandatory initial disclosures. At the conference, plaintiffs withdrew their request for the phone records of Pool Defendants' witnesses. After hearing from the parties, the Court holds that

direct-purchaser plaintiffs' request for expense reports is
overly broad, and the burden and expense of the proposed
discovery outweighs its likely benefit. The Court orders the
defendants to produce diaries and calendars of identified
PoolCorp personnel and orders the parties to confer to narrow the
list of relevant personnel.

c. *Communications with Suppliers*

PoolCorp argues that plaintiffs' requests for documents
reflecting communications with its 10 largest suppliers is overly
broad and burdensome because, as a distributor, it typically
engages in voluminous contacts with its suppliers that have no
relevance to plaintiffs' claims. The Court finds plaintiffs'
request overly broad and limits this request to communications
about other Pool Product distributors or other suppliers'
dealings with such distributors.


2. Requests to Manufacturer Defendants

a. *Diaries, Calendars, and Expense Reports*

Manufacturer Defendants also object to producing expense
reports, calendars, and diaries for the witnesses they have
identified. The Court holds that direct-purchaser plaintiffs'
request for expense reports is overly broad, and the burden and
expense of the proposed discovery outweighs its likely benefit.
The Court orders the defendants to produce diaries and calendars

of identified Manufacturer personnel and orders the parties to confer to narrow the list of relevant personnel.


*b. Other Requests to Manufacturer Defendants*

Manufacturer Defendants object to direct-purchaser plaintiffs' requests for supplier reports, earnings call transcripts, trade association materials, monthly inventory data, and communications among the Manufacturer Defendants. Plaintiffs withdrew their requests for the supplier reports, earnings call transcripts, and monthly inventory data. The Court holds that trade association materials are relevant to plaintiffs' conspiracy claims and not unduly burdensome to produce. The Court further holds that direct-purchaser plaintiffs are entitled to communications among Manufacturer Defendants only to the extent that the communications relate to PoolCorp or other distributors of Pool Products.


*B.   Defendants' Requests for Discovery from Plaintiffs*

1. PoolCorp's Requests for Discovery from Plaintiffs

*a. Category 13*

Pool Defendants request that direct-purchaser plaintiffs list suppliers of some or all Pool Products and produce copies of any agreements or contracts with them. Plaintiffs object to compiling a list but agree to produce documents in response to

this request, except as it refers to plaintiffs' competitors. The Court finds that it is not unduly burdensome for plaintiffs to compile a list of suppliers of Pool Products. Accordingly, plaintiffs must identify sources of supply for Pool Products and must produce any contracts or agreements with them. Plaintiffs need not compile a list of the other information sought in Category 13 as it is either irrelevant or unduly burdensome.

b. *Category 25*

Category 25 of PoolCorp's request for discovery from direct-purchaser plaintiffs calls for "a list of witnesses who will support plaintiffs' claims, including the names of witnesses, address, phone number and email address; and [a]ny documents provided to plaintiffs' counsel during the course of their investigation."[5] Direct-purchaser plaintiffs have already provided defendants with a supplemental list of the names of 25 individuals with information likely to support their claims. The plaintiffs designated the disclosures as "Highly Confidential", preventing defendants' counsel from sharing the names with their clients.

Direct-purchaser plaintiffs argue that the limited disclosure and the "Highly Confidential" designation is appropriate because the confidential sources are whistleblowers

---

[5] R. Doc 167-1 at 4.

who spoke with plaintiffs under an expectation that their identifies would be protected. Plaintiffs rely on *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 353 (5th Cir. 2002), which held that a plaintiff need not identify confidential sources <u>in its complaint</u> to meet the pleading requirements of the Private Securities Litigation Reform Act (PSLRA). The Court finds *ABC Arbitrage* irrelevant and unpersuasive because the issue presented here is discovery and not the pleading requirements of the PSLRA. Direct-purchaser plaintiffs must respond to Category 25 by providing addresses and other identifying information of witnesses and sources who provided information for the complaint and must remove the "Highly Confidential" designation. "Witnesses" includes individuals who provided information in support of the complaint whether or not plaintiffs intend to use these individuals as witnesses to prove their claims at trial. *In re Auto. Refinishing Paint Antitrust Litig.*, MDL 1426, 2006 WL 1479819 (E.D. Pa. 2006)(requiring antitrust plaintiffs to respond to interrogatories seeking the identification of witnesses that provided information supporting any of the allegations). Direct-purchaser plaintiffs must also produce any documents that were produced to plaintiffs' counsel during the course of their investigation, save for documents protected by the attorney work product doctrine.

*b. Downstream Discovery*

The direct-purchaser plaintiffs object to defendants'
requests for numerous categories of information relating to
direct-purchaser plaintiffs' downstream sales and marketing
activities and their profits, losses, and financial performance
as irrelevant to their claims and unduly burdensome. Having
reviewed the parties' arguments and the authorities cited in
their joint discovery report and the attachments thereto[6], and
having conducted its own review of the case law on downstream
discovery in antitrust cases, the Court will not order the
proposed discovery for the following reasons.

Defendants contend that downstream discovery is relevant to
class certification issues, including typicality and adequacy of
representation, and to the issues of the relevant product and
geographic markets, and PoolCorp's market power (or lack thereof)
in those markets. Defendants also contend that the downstream
discovery is relevant to damages, fraudulent concealment, and
indirect-purchaser issues. The direct-purchaser plaintiffs have
already produced or agreed to produce all of the pricing data and
other information in their possession, custody, or control
concerning their purchases of Pool Products from PoolCorp and
other distributors. The dispute, then, is over information about
the pricing and sale of Pool Products by direct-purchaser

---

[6] R. Doc. 167.

13

plaintiffs to their customers and about direct-purchaser plaintiffs' profits, losses and financial condition. The majority of courts that have decided discovery disputes concerning downstream information in antitrust cases have declined to compel plaintiffs to produce downstream documents. Their decisions stem from the Supreme Court's opinions in *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481 (1968), and *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). The Supreme Court in *Hanover Shoe* held that defendants could not assert a "pass-on" defense in antitrust overcharge cases. A "pass-on" defense asserts that a direct purchaser of goods who then resells the goods is not injured by overcharges because the overcharges are "passed on" to the indirect purchaser. *Illinois Brick* held that only the overcharged direct purchasers, and not others in the chain of distribution, could maintain actions under the Act against collusive price-fixers. These cases reflect an unwillingness by the Supreme Court to complicate the proof in overcharge cases "with attempts to trace the effects of the overcharge on the purchaser's prices, sales, costs, and profits, and of showing that these variables would have behaved differently without the overcharge." *Illinois Brick Co.*, 431 U.S. at 725. Based on these cases, lower courts have, for the most part, found downstream information to be nondiscoverable, whether for market definition, class certification, damages, or indirect purchaser issues. *See,*

14

*e.g., In re Air Cargo Shipping Services Antitrust Litig.*, 06-MD-1775, 2010 WL 4916723 (E.D.N.Y. 2010)(downstream information not discoverable on class certification issue of predominance); *Meijer, Inc. v. Abbott Laboratories*, 251 F.R.D. 431, 433-34 (N.D.Cal. 2008)(not discoverable on class certification issue of adequacy of representation); *In re Aspartame Antitrust Litigation*, No. 2:06-CV-1732-LDD, 2008 WL 2275528, at *4-6 (E.D.Pa. 2008)(not discoverable on class certification and indirect purchaser issues); *In re K-Dur Antitrust Litigation*, No. 01-1652, MDL Docket No. 1419, 2007 WL 5302308, at *11-12 (D.N.J. 2007)(not discoverable on adequacy of representation, damages, and indirect purchaser issues); *In re Automotive Refinishing Paint Antitrust Litigation*, No. MDL 1426, 2006 WL 1479819, at *8 (E.D.Pa. 2006)(not discoverable for determination of damages, to provide circumstantial support for the nonexistence of the alleged price-fixing, or to indicate whether Plaintiffs engaged in speculative purchasing).

Defendants argue that downstream information is germane to a determination of the relevant market because market definition is dependent upon the "perspective of the downstream purchasers about demand, substitutability, and how far they would travel to purchase the products at issue in this case."[7] The market at issue in direct-purchaser plaintiffs' claims, however, is the

---

[7] *Id.* at 17.

market in which PoolCorp sold Pool Products to the direct-purchaser plaintiffs, not the market in which direct-purchaser plaintiffs sold products to their customers. It is the demand and supply conditions in this market that will be scrutinized to define the relevant market and PoolCorp's market power. Further, even if the court accepted defendants' argument that demand by downstream purchasers is relevant, direct-purchaser plaintiffs are only seven out of hundreds of Pool Products dealers, and they are based in only six states. It is far from clear that the plaintiffs' burden of amassing sales, costs, and profit data will be outweighed by the production of relevant information that the Pool and Manufacturer Defendants do not already have more readily available sources for.

The Court likewise finds that the downstream information is not discoverable for the class certification issues of typicality or adequacy of representation. The Fifth Circuit has held that the test for typicality is "not demanding." *Mullen v. Treasure Chest Casino, LLC,* 186 Fed. 3d 620 (5th Cir. 1999). The test "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Id.* (citing *Lightbourn*, 118 F. 3d at 426). The class complaint indicates that the direct purchasers premise liability on overcharges they paid on Pool Products as a result of defendants' alleged exclusive agreements to eliminate

PoolCorp's actual and potential rivals and Pool's monopolization and attempted monopolization of the Pool Products market through exclusionary conduct and the acquisition of rivals. The Complaint alleges that the representative parties' claims arise from the same practices or course of conduct that gives rise to the claims of other class members, and plaintiffs assert that a common legal theory applies to the claims. *See In Re: Ready-Mixed Concrete Antitrust Litigation*, 261 F.R.D. 154, 167-68, S.D. Indiana, 2009; *In Re: Fresh Del Monte Pineapples Antitrust Litigation*, 2008, U.S. Dist. Lexis 18388, at 15 (S.D.N.Y. 2008)(typicality satisfied when each class members' claim arises from the same course of events and each class member makes similar legal arguments to prove defendant's liability). The Court does not see how plaintiffs' sales, profits, or financial conditions, to the extent that they are different, would create atypicalities on the relevant inquiry, that is, whether the representatives' claims are typical of the other class members in terms of their legal and remedial theories, or whether they arise from the same general course of conduct by the defendants. The relevant focus should be on plaintiffs' purchases, not on their sales. Data on plaintiffs' purchases can be ascertained from the discovery that plaintiffs' must provide in response to defendants' other requests.

The Court also finds that downstream discovery is not germane to the issue of adequacy of representation. The defendants rely on *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181 (11th Cir. 2003), for the proposition that downstream discovery is pertinent to the adequacy issue under Rule 23. In *Valley Drug*, the Eleventh Circuit found that the putative class, which included three major national wholesalers and other direct purchasers, likely had different interests because the national wholesalers may have benefitted from the alleged anticompetitive activity. *See id.* at 1191. The Fifth Circuit has not decided the question of downstream discovery in a context such as this one, and this Court declines to follow *Valley Drug.* As the Supreme Court explained in *Illinois Brick* and *Hanover Shoe*, a direct purchaser may recover for an antitrust overcharge whether or not the party experienced a net loss or net gain (by passing on the overcharge to downstream parties). *See Illinois Brick*, 431 U.S. at 724-25; *Hanover Shoe*, 392 U.S. at 489. In *Hanover Shoe*, the Supreme Court ruled that the buyer is equally entitled to overcharge damages if he raises the price for his own product:

> As long as the seller continues to charge the illegal price, he takes from the buyer more than the law allows. At whatever price the buyer sells, the price he pays the seller remains illegally high.

*Id.* These decisions make it legally irrelevant whether some direct purchasers in the class benefitted from the overcharge,

because if an overcharge occurred, all of the class members are entitled to recover, regardless of whether some direct purchasers experienced a net benefit, while others experienced a net loss. In short, for there to be a conflict among class members, the conflict must be on a matter that is relevant. If it is irrelevant to the plaintiffs' recovery that they may have passed on the overcharge, then this inquiry is not relevant to the adequacy of representation question. *See In Re: Wellbutrin SR Direct Purchaser Antitrust Litigation*, 2008 U.S. Dist. Lexis 36719 (E.D. Pa. 2008); *Meijer, Inc.*, 246 F.R.D. at 304; *In Re: Hypodermic Product Direct Purchaser Antitrust Litigation*, 2006 U.S. Dist. Lexis 89353 at 19 (D.N.J. 2007).

Further, this Court disagrees with the Eleventh Circuit's reasoning that distinguished *Hanover Shoe* and *Illinois Brick*. The Eleventh Circuit reasoned that the question these Supreme Court cases addressed is distinctly separate from the issue of whether class certification is appropriate when a "fundamental" conflict exists among the named and unnamed members of a class. 350 F.3d at 192. But a conflict among class members cannot be "fundamental" if Supreme Court case law renders it irrelevant. *See Wellbutrin*, 2008 U.S. Dist. Lexis 36719 at *27. Moreover, the Supreme Court's decision in *Hanover Shoe* reflected an unwillingness to introduce into these cases the additional evidence and complex theories involved in an issue, the proof of

which is nearly impossible in the typical case. *Hanover Shoe*, 392 U.S. at 2231 ("since establishing the applicability of the passing-on defense would require a convincing showing of each of these virtually unascertainable figures, the task would normally prove insurmountable."). The Supreme Court further reasoned that allowing the pass-on defense would provide a disincentive to direct purchasers to sue, thereby reducing the effectiveness of the treble-damage action. *Id.* at 2232. If the Supreme Court found these concerns sufficiently compelling to prevent a defendant from asserting a pass-on defense to the merits of a claim by a direct purchaser, then the Court's reasons apply *a fortiori* to foreclosing this enormously complicated and burdensome discovery on one element of a multi-factor test for class certification.

Finally, the Court finds that downstream information is not relevant to the issue of fraudulent concealment, which requires the plaintiffs' to prove, "first, that the defendants concealed the conduct complained of, and second, that the plaintiff failed, despite the exercise of due diligence on his part, to discover the facts that form the basis of his claim. *State of Tex. v. Allan Const. Co., Inc.*, 851 F.2d 1526, 1528 (5th Cir. 1988). Plaintiff's downstream sales, profits, and financial information do not appear to be pertinent to either element of fraudulent concealment. Further, to the extent downstream information might be marginally relevant to fraudulent concealment, there are

20

clearly less burdensome ways to address this issue through depositions of plaintiffs' personnel and review of the other documents plaintiffs must produce.

Defendants also rely on *Air Tech Equip., Ltd. v. Humidity Ventilation Systems, Inc.*, No. 05-CV-77 CPS, 2006 WL3193720 (E.D.N.Y. 2006), in support of their request for downstream information. This case is likewise not persuasive. In *Air Tech*, the defendants filed counterclaims alleging that plaintiffs engaged in price fixing in violation of Section 1 of the Sherman Act.  The *Air Tech* court ordered some discovery of downstream data concerning the pricing of the defendants' products because the information was relevant to the defendants' contention that they did not become more profitable because of plaintiffs' price-fixing. The defendants intended to prove their contention by comparing their total sales before the wrongful conduct with their total sales after the wrongful conduct. The court concluded that information about the defendants' downstream pricing might provide an alternative explanation for their lack of growth and profitability, namely, that this result was attributable to the defendants' own pricing practices. *Air Tech* is distinguishable because the defendants there were seeking damages for lost profits, which made downstream information relevant to determining other impacts on their profitability. Here, plaintiffs are seeking damages based only on the alleged

overcharges, not lost profits. Downstream information about plaintiffs' sales and profits is therefore irrelevant to whether direct-purchaser plaintiffs were overcharged in the market in which they purchased pool products for distribution.

In this case, the burden of compelling discovery of direct-purchaser plaintiffs' downstream information greatly outweighs any likely benefit. Consistent with this general finding, the Court rules that the following specific categories of documents requested by Pool Defendants constitute downstream information and are not discoverable:

- Category 2 (sales of pool products to end customers)
- Category 3 (profits and losses)[8]
- Category 4 (financial performance and credit lines)
- Category 5 (profit margins)

The Court limits as indicated the following specific categories of documents requested by Pool Defendants in order to exclude discovery of downstream information:

- Category 9 (business, strategic, and marketing plans):
  - Plaintiffs agreed to produce these documents without waiving their objection to producing downstream materials. Plaintiffs shall produce these documents to the extent they agreed to do so.
- Category 10 (pricing guides):

---

[8] Whether profit and loss statements are characterized as downstream or not, these documents are irrelevant because plaintiffs' claims are not based on loss of business.

- Documents related to plaintiffs' sales are excluded.
- Category 11 (number of employees, years of operation, locations, and plans for expansion or retrenchment)
  - Documents related to plaintiffs' plans for expansion or retrenchment are excluded.
- Category 16 (documents discussing increased or decreased demand for Pool Products)
  - Documents related to purchases of Pool Products from plaintiffs are excluded.
- Category 20 (communications about price or terms of sale of Pool Products)
  - Documents related to direct-purchaser plaintiffs' sales are excluded.
- Category 21 (documents showing comparisons of Pool Product prices)
  - Documents comparing downstream prices set by direct-purchaser plaintiffs are excluded.
- Category 27 (internal communications regarding prices offered or paid for Pool Products)
  - Communications regarding prices paid by or offered to downstream purchasers are excluded.
- Category 28 (documents showing terms of discount or rebate programs)
  - Documents related to discounts or rebates offered by direct-purchaser plaintiffs are excluded.
- Category 30 (marketing and advertising materials)
  - Any materials not paid for or provided by defendants are excluded.

*c. Other Pool Requests for Discovery from Plaintiffs*

In addition to prohibiting the discovery of downstream documents, the Court addressed several other contested requests at the conference. After hearing from the parties, the Court rules that the following specific categories of documents requested by Pool Defendants lack relevance to plaintiffs'

23

claims, and the burden of producing them outweighs the likely benefit:

- Category 8 (minutes from plaintiffs' Board of Directors meetings)
- Category 12 (non-compete agreements with terminated employees)
- Category 24 (communications with competitors regarding Pool Product prices)

In Category 17, Pool Defendants asked direct-purchaser plaintiffs to identify and describe each communication that direct-purchaser plaintiffs claim "reflects or was made in furtherance of the unlawful agreements alleged" in the complaint.[9] Upon hearing from the parties, the Court rules that this request must be answered with any pertinent documents, but direct-purchaser plaintiffs need not list the conversations or provide descriptions. See discussion of contention interrogatories, *infra*, at 25-26.

In Category 18 Pool Defendants asked direct-purchaser plaintiffs to identify how they suffered damages, the quantity of total damages, and any steps taken to mitigate the alleged damages. The Court rules that it would be premature to require plaintiffs to answer what are in effect damages interrogatories, at this point in the case. These issues can be inquired into at depositions, unless the inquiry is directed at whether

---

[9] R. Doc. 167-1 at 3.

plaintiffs mitigated their damages by passing on any overcharge, which is irrelevant.

3. Manufacturer Requests for Discovery from Plaintiffs

a. *Manufacturer Interrogatory Requests*

Manufacturer defendants submitted 23 multipart interrogatories, which sought detailed information, narrative responses, and contentions. In Pretrial Order No. 5, the Court made clear these types of requests were not to be exchanged. In virtually every case, the information sought by the Manufacturer Defendants, to the extent that it is an appropriate subject of discovery, can be more efficiently obtained through document discovery and depositions. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) ("the court must limit the...extent of discovery...if it determines that the discovery sought...can be obtained from some other source that is more convenient, less burdensome, or less expensive"). Further, although Federal Rule of Civil Procedure 33(a)(2) permits certain contention or opinion interrogatories, it gives the Court discretion to order that such an interrogatory need not be answered until discovery is complete or some other time. "While this Rule permits contention interrogatories, the scope and timing are governed by the court's discretion." *Brassell v. Turner*, 3:05 CV 476LS, 2006 WL 1806465 (S.D. Miss. 2006). The Committee Note to the 1970

amendment of Rule 33(b) said, "interrogatories involving mixed questions of law and fact may create disputes between the parties which are best resolved after much or all of the other discovery has been completed." 48 F.R.D. at 524. Early in the discovery process, contention interrogatories are more likely to be used for harassment than as a useful discovery device. *Brassell* 2006 WL 1806465 at \*3; *In re Convergent Technologies Securities Litigation*, 108 F.R.D. 328 (N.D.Cal. 1985) ("comprehensive sets of contention interrogatories can be almost mindlessly generated, can be used to impose great burdens on opponents, and can generate a great deal of counterproductive friction between parties and counsel.") Thus, with the following exceptions, the Court rules that indirect-purchaser plaintiffs will not be compelled to respond to defendants' interrogatory requests.

Exceptions:

- Interrogatory No. 1: Direct-purchaser plaintiffs must identify all suppliers from which they purchased Pool Products.
- Interrogatory No. 8: Direct-purchaser plaintiffs must identify all persons employed by any plaintiff who was responsible for purchasing Pool Products on their behalf.
- Interrogatory No. 10: Direct-purchaser plaintiffs must identify locations where they store, sell, or advertise Pool Products.

b. *Manufacturer Document Requests*

Manufacturer Defendants also request categories of documents from direct-purchaser plaintiffs. Upon hearing from the parties, the Court rules that direct-purchaser plaintiffs must respond to all manufacturer document requests except for the following, which the Court denies or limits. As in the case of PoolCorp's requests, the Court denies the following requests to eliminate discovery of downstream documents and categories in which the burden of production outweighs the likely benefit:

- Request No. 10 (financial performance)
- Request No. 12 (business operations performance)
- Request No. 20 (documents showing each sale by each plaintiff)
- Request No. 21 (documents showing profit margins for each sale by each plaintiff)

The Court also limits as indicated the following document requests to exclude downstream and irrelevant information:

- Request No. 4 (documents related to buying groups)
  - Limited to direct-purchaser plaintiffs' communications with buying groups about their purchases of Pool Products.
- Request No. 5 (advertising or marketing materials)
  - Any materials not paid for or provided by defendants are excluded.
- Request No. 9 (marketing strategies, strategic plans, pricing policies, competition, and sources of supply)
  - Documents related to direct-purchaser plaintiffs' sales, pricing, and marketing strategies are excluded.
- Request No. 11 (business plans, strategic plans, and market studies)
  - Plaintiffs agreed to produce these documents without waiving their objection to producing downstream materials. Plaintiffs shall

produce these documents to the extent they
agreed to do so.

- Request No. 13 (budget statements, and other
  projections)
    - Documents related to direct-purchaser
      plaintiffs' profits, losses, and sales are
      excluded. Limited to direct-purchaser
      plaintiffs' documents related to purchases
      and the expenses of purchases.
- Request No. 17 (communications about prices)
    - Limited to communications about prices
      direct-purchaser plaintiffs were offered or
      prices they paid for Pool Products.
- Request No. 18 (documents related to agreements
  for purchase or  sale of Pool Products)
    - limited to documents related to direct-
      purchaser plaintiffs' purchases.
- Request No. 23 (documents related to terminations
  of sales or purchase agreements)
    - Limited to documents related to termination
      of sales relationships with direct
      purchasers' suppliers.
- Request No. 24: (documents supporting claims to
  damages)
    - Many of the categories of documents direct-
      purchaser plaintiffs will produce are
      relevant to damages. But, the Court finds
      that is it premature to order plaintiffs to
      segregate damages documents at this time. The
      Court instructed the parties to develop a
      proposed case management order with a
      timeline for damages discovery.

New Orleans, Louisiana, this 6th day of November, 2012.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE