UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: POOL PRODUCTS DISTRIBUTION | * | MDL NO. 2328 |
| MARKET ANTITRUST LITIGATION | * | |
| | * | SECTION R/2 |
| THIS DOCUMENT RELATES TO: | * | |
| | * | |
| *Kistler, et al. v. Pool Corporation,* | * | JUDGE VANCE |
| *Et al, No. 12-1284* | * | MAG. JUDGE WILKINSON |

_____

## INDIRECT PURCHASER PLAINTIFFS' THIRD AMENDED
## CLASS ACTION COMPLAINT

Plaintiffs Kevin Kistler, Jean Bove, Peter Mougey, and Ryan Williams bring this action on behalf of themselves individually and on behalf of Class Members in Arizona, California, Florida, and Missouri as indirect purchasers of swimming pool products (hereinafter "indirect purchasers"), by and through their undersigned attorneys, against Defendants named in this Complaint for violations of state antitrust and consumer protection laws based upon unfair practices which inflated the prices paid by Plaintiffs and Class Members for swimming pool products and for damages, including attorneys' fees and costs, and demand a jury trial.  Plaintiffs upon information and belief, the Consent Decree, Decision and Order of the Federal Trade Commission (dated January 10, 2012) allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs bring this action on behalf of themselves and putative Class Members in Arizona, California, Florida, and Missouri who indirectly purchased swimming pool products from Defendants at any time between January 1, 2008 and the present ("Class Period").

Swimming pool products (hereinafter "Pool Products") are the equipment, products, chemicals, parts or materials for the construction, maintenance, repair, renovation or service of residential and commercial swimming pools indirectly sold by Defendants Pool Corporation, SCP Distributors LLC or Superior Pool Products LLC. (collectively "PoolCorp"), and pool products sold indirectly by Hayward Industries, Inc. ("Hayward"), Pentair Water Pool and Spa, Inc. ("Pentair"),  and Zodiac Pool Systems, Inc. ("Zodiac") (collectively, "the Manufacturer Defendants").  Pool Products include, among other goods, chemicals, pumps, filters, heaters, covers, cleaners, steps, rails, diving boards, pool liners, pool walls, and "white goods" (the parts necessary to maintain pool equipment).  The Pool Product Distribution market includes residential and commercial swimming pools and leisure products.

2      This class action lawsuit involves unfair practices, attempted monopoly conduct by PoolCorp, and unlawful vertical agreements between PoolCorp, and each of Hayward, Pentair and Zodiac in the Pool Products Distribution Market in the United States.  Defendants' illegal conduct violated state antitrust provisions of Ariz. Rev. Stat. §§ 44-1401, *et seq.*, the Cartwright Act, Cal. Bus. & Prof. Code §§ 16720, *et seq.* and the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.,* and the Florida Deceptive and Unfair Trade Practices Act, Fl. Stat. §§ 501.201, *et seq.,* including §501.204, and of the Missouri Merchandising Practices Act, §§ 407.010, *et seq.*, R.S.M.  Defendants did in fact conspire to raise and maintain the prices at which Pool Products would be sold.  Defendants Pool Corporation, SCP Distributors LLC or Superior Pool Products LLC. used their market power to engage in unfair practices and entered into unlawful vertical agreements with each of Defendants Hayward, Pentair, and Zodiac to

artificially raise and maintain prices at which Pool Products would be sold during the Class Period.

3.       As part of a deliberate strategy to unlawfully restrain trade and to engage in unfair and anticompetitive practices, PoolCorp, among other things: (1) acquired numerous competitors throughout the United States, thereby establishing itself as the only Pool Products distributor able to offer national coverage, (2) foreclosed actual and potential competitors by threatening to refuse to deal with Pool Products manufacturers if the manufacturers sold to new distributors, and (3) engaged in unfair and anticompetitive acts that artificially inflated the prices of Pool Products in the United States, including the States of Arizona, California, Florida, and Missouri. With the assistance and agreements of the only full-line Pool Products vendors, the Manufacturer Defendants and PoolCorp eliminated various existing distribution competitors, and prevented other would-be rivals from obtaining the products necessary to compete, blocking them from penetrating the market and raising their costs to obtain Pool Products.  Defendants' unlawful conduct resulted in higher prices, reduced output, and reduced customer choice for Pool Products sold indirectly to Plaintiffs and members of the Class in the States of Arizona, California, Florida, and Missouri.

4.       This class action lawsuit is based on direct evidence from the Federal Trade Commission's investigation and subsequent Decision and Order, dated January 10, 2012, and the Consent Decree signed by PoolCorp.  Specifically, PoolCorp unlawfully (1) intimidated Pool Products manufacturers; (2) threatened to refuse to deal with any Pool Products manufacturer that would sell Pool Products to any new distributors entering the market; and (3) acquired competitors (other Pool Product distributors) and thereafter closed their businesses which

decreased output and availability of Pool Products.   These tactics foreclosed competitors from obtaining the necessary Pool Products to compete in the Pool Distribution Market and impeded new entrants by raising their costs, and resulted in higher consumer prices, reduced output and less consumer choice for Pool Products in the United States.

5.      Based upon Defendants' anticompetitive conduct and unfair practices, the Federal Trade Commission began an investigation of PoolCorp's unlawful practices, which culminated in a recent proposed Consent Order under which the company agreed to refrain from engaging in certain exclusionary and anticompetitive practices.

6.      Through these Defendants' illegal acts, Plaintiffs and Class Members paid and continue to pay artificially inflated prices that exceed the amount they would have paid if a competitive market had determined prices for Pool Products.   The overcharge suffered by Plaintiffs and Class Members, as indirect purchasers, is identifiable and traceable to the prices Plaintiffs and Class Members paid during the Class Period.   Plaintiffs and Class Members suffered the type of injury that the Arizona Antitrust Laws, the Cartwright Act and the Unfair Competition Law of the California Business & Professional Code, the Florida Deceptive and Unfair Trade Practices Act, and the Missouri Merchandising Practices Act were designed to prevent.

## JURISDICTION AND VENUE

7.      This Court has diversity jurisdiction over the claims raised in this matter pursuant to 28 U.S.C. § 1332(a) with the parties being citizens of different states and between citizens of a state and citizens of a foreign state.

4

8.      This Court has subject matter jurisdiction of the pendant state claims under 28 U.S.C. § 1367.

9.      Venue is proper because during the relevant Class Period (from at least as early as January 1, 2008 through the present) Defendants Pool Corporation, SCP Distributors LLC and/or Superior Pool Products LLC. are headquartered in Covington, Louisiana, are affiliated corporations, transacted business, were found, and/or had agents in this District, and because a substantial portion of the affected interstate trade and commerce described herein is and has been carried out in this District during the Class Period.

10.     Each Defendant has: (a) transacted business throughout the United States, including Arizona, California, Florida, and Missouri; (b) directly or indirectly sold or marketed substantial quantities of Pool Products throughout the United States, including Arizona, California, Florida, and Missouri; (c) had substantial aggregate contacts with the United States as a whole, including Arizona, California, Florida, and Missouri; and/or (d) participated in unlawful conduct to raise and maintain the prices of Pool Products that was directed at, and had the intended effect of causing injury to persons and entities residing in, located in, or doing business throughout the United States, including in this District and in Arizona, California, Florida, and Missouri.

11      During the Class Period, Defendants conducted business throughout the United States and have purposely availed themselves of the laws of the States of Arizona, California and Florida, and Missouri.  There has been a continuous and uninterrupted flow of transactions and shipments of Pool Products in interstate commerce throughout the United States, including Arizona, California, Florida, and Missouri.

**PARTIES**

12.    Plaintiff Kevin Kistler is an Arizona citizen residing in Chandler, Arizona. During the Class Period, Plaintiff Kistler indirectly purchased in Arizona and not for resale Pool Products from one or more of Defendants Pool Corporation, SCP Distributors LLC, Superior Pool Products LLC., Pentair, Hayward, or Zodiac and has been injured by reason of the unlawful conduct alleged herein.

13.    Plaintiff Jean Bove is a California citizen residing in Pasadena, California. During the Class Period, Plaintiff Bove indirectly purchased in California and not for resale Pool Products from one or more of Defendants Pool Corporation, SCP Distributors LLC, Superior Pool Products LLC., Pentair, Hayward, or Zodiac and has been injured by reason of the unlawful conduct alleged herein.

14.    Plaintiff Peter Mougey is a Florida citizen residing in Pensacola, Florida.  During the Class Period, Plaintiff Mougey indirectly purchased in Florida and not for resale Pool Products from one or more of Defendants Pool Corporation, SCP Distributors LLC, Superior Pool Products LLC., Pentair, Hayward, or Zodiac and has been injured by reason of the unlawful conduct alleged herein.

15.    Plaintiff Ryan Williams is a Missouri citizen residing in Kansas City, Missouri. During the Class Period, Plaintiff Williams indirectly purchased  primarily for personal, family, or household purposes, and not for resale in Missouri Pool Products from one or more Defendants Pool Corporation, SCP Distributors LLC, Superior Pool Products LLC., Pentair, Hayward, or Zodiac and has been injured by reason of the unlawful conduct alleged herein.

6

16.     Defendant Pool Corporation ("PoolCorp") is a Delaware corporation with its principal place of business at 109 Northpark Boulevard, Covington, Louisiana.

17.     Defendant SCP Distributors LLC ("SCP") is a Delaware limited liability company with its principal place of business at 109 Northpark Boulevard, Covington, Louisiana. Defendant SCP Distributors LLC is a wholly owned and controlled subsidiary of Defendant Pool Corporation.

18.     Defendant Superior Pool Products LLC ("Superior") is a Delaware limited liability company with its principal place of business at Anaheim, California.  Defendant Superior Pool Products LLC is a wholly owned and controlled subsidiary of Defendant Pool Corporation.

19.     Defendant Hayward Industries, Inc. ("Hayward") is a New Jersey corporation with its principal place of business in Elizabeth, New Jersey.  Hayward is the largest manufacturer of residential swimming pool equipment in the world, according to its website.[1] Hayward sells its products throughout the United States, including in Arizona, California, Florida, and Missouri, working with distributors to support "millions of satisfied pool owners who use Hayward equipment."[2]

20.     Defendant Pentair Water Pool and Spa, Inc. ("Pentair") is a Delaware corporation with its principal place of business in Sanford, North Carolina.  Pentair asserts that it "is the

---

[1]        *About        Us,*        Hayward        Industries.com, http://www.haywardindustries.com/webapp/wcs/stores/servlet/HaywardIndustriesInfo_10201_10054_-1_about us (last visited August 17, 2012)

[2] *Id.*

7

world's leading manufacturer of pool and spa equipment and accessories."[3] And "the global leader in swimming pools, spa and aquatic equipment."[4] According to Pentair's website, "[w]e built our company so the pool professional and, by extension, the pool owner can secure all the best products from a single source."[5]

21.     Defendant Zodiac Pool Systems, Inc. ("Zodiac") is a Delaware corporation with its principal place of business in Vista, California. According to Zodiac's website, "Zodiac is a leading global manufacturer of differentiated pool and spa products."[6] Zodiac asserts that it is "the provider of choice for millions of people worldwide."[7]

22.     Hayward, Pentair, and Zodiac -- the "Manufacturer Defendants" -- are the three largest manufacturers of Pool Products in the United States. They are the only U.S. manufacturers that each sell nearly all the Pool Products necessary to install, operate, and maintain a pool. They are also PoolCorp's three largest suppliers. Each entered into a supply agreement with PoolCorp, as did other manufacturers from whom PoolCorp purchased.

## AGENTS AND CO-CONSPIRATORS

23.     Defendants have and continue to act as each other's agents or joint venturers with respect to unlawful conduct, and any Defendant that is a subsidiary of a parent acted as its parent company's agent and/or alter ego for its parents' sales in the United States, including Arizona,

---

[3] PENTAIR, http://www.pentairpool.com/index.htm (last visited August 17, 2012).

[4] PENTAIR, http://www.pentairpool.com/index.htm (last visited August 17, 2012).

[5] *About Us*, PENTAIRPOOL.COM, http://www.pentairpool.com/pool-pro/about us/ (last visited August 17, 2012)

[6] *About*, ZODIACPOOLSYSTEMS.COM, http://www.zodiacpoolsystems.com/About.aspx (last visited August 17, 2012)

[7] *Id.*

California, Florida, and Missouri of Pool Products sold by PoolCorp, Pentair, Hayward, and Zodiac during the Class Period.

24.     Various other persons, firms, and corporations not named as Defendants in this Complaint have participated as co-conspirators with Defendants in the violations alleged herein and performed acts and made statements in furtherance of Defendants' raising and maintaining the prices of Pool Products during the Class Period.

25.     The true names and capacities, whether individual, or agents, or otherwise of co-conspirators are unknown to Plaintiffs at this time.  Plaintiffs may amend this Complaint to allege the true names and capacities of co-conspirators when they become known.

## TRADE AND COMMERCE

26.     The activities of Defendants that are subject to this action are within the flow of, and substantially affected, interstate trade and commerce within the United States, including trade and commerce to, from, and within the States of Arizona, California, Florida, and Missouri.

27.     Defendant PoolCorp is the world's largest distributor of Pool Products and operates over 50% of all pool distribution facilities in the United States.  Defendant PoolCorp operates through Defendant SCP 7 sales centers in Arizona, 24 in California, 31 in Florida, and 3 in Missouri.   Defendant PoolCorp operates through Defendant Superior 4 sales centers in Arizona, 21 in California, 6 in Florida, and 1 in Missouri.  *Pool Corporation Annual 10K 2010*. Defendants substantially affected interstate trade and commerce in the States of Arizona, California, Florida, and Missouri, and throughout the United States. In 2010, Defendant PoolCorp had roughly $1.5 billion in net sales revenue.  *Pool Corporation Annual 10K 2010*.

28.    "Approximately 70% of consumer spending in the pool industry is for maintenance and minor repair of existing swimming pools. Maintaining proper chemical balance and the related upkeep and repair of swimming pool equipment, such as pumps, heaters, filters and safety equipment, creates a non-discretionary demand for pool chemicals, equipment and other related parts and supplies."  "We conduct our operations through 291 sales centers in North America and Europe. Our primary markets, which have the highest concentration of swimming pools, are California, Florida, Texas and Arizona, representing approximately 50% of our net sales in 2010." *Pool Corporation Annual 10K 2010.*

## RELEVANT POOL PRODUCTS MARKET

29.    There are over nine million residential pools in the United States, and over 250,000 commercial pools operated by hotels, country clubs, private clubs, apartment buildings, municipalities, and others.  In 2010, the distribution of Pool Products was an estimated $3 billion industry in the United States.

30.    The relevant product market is the Pool Distribution Market in the United States. "Pool Products" are the equipment, products, parts or materials and chemicals used for the construction, renovation, maintenance, repair or service of residential and commercial swimming pools sold directly and indirectly by Defendants Pool Corporation, SCP Distributors LLC, Superior Pool Products LLC., Hayward, Pentair, or Zodiac.  Pool Products include, among other goods, pumps, filters, heaters, covers, cleaners, steps, rails, diving boards, pool liners, pool walls, and "white goods" (the parts necessary to maintain pool equipment).  Pool Products do not include pool toys or games, or products used solely for landscaping or irrigation, Olympic-style pools, or pools used in commercial water parks.

31.     Pool Products are designed and manufactured specifically for residential and commercial swimming pools.  There are no close substitutes for Pool Products, and no other products significantly constrain their pricing.

32.     Pool distributors, such as PoolCorp, purchase nationwide Pool Products from manufacturers, warehouse them, and then resell those products to pool builders, pool retail stores, and pool service and repair companies (collectively, "Dealers").  Dealers then sell the Pool Products to the ultimate end-payor consumer (owners of residential and commercial pools) such as Plaintiffs and Class Members.  Any price increases are passed on from the manufacturers to PoolCorp and then to Dealers which pass them on to Plaintiffs and Class members.  Any overcharge caused by Defendants' unlawful conduct during the Class Period is identifiable and traceable between the manufacturer, distributor, Dealer, and the ultimate consumer, such as Plaintiffs and Class Members in Arizona, California, Florida, and Missouri.

33.     The relevant geographic market is the Pool Product Distribution Market in the United States.

## FACTUAL BACKGROUND

## I.     The Pool Product Distribution Market.

34.     The Pool Products market is generally very fragmented.  There are over 100 manufacturers that produce a small number of product lines, such as pool heaters or diving boards and rails.  However, only the three Manufacturer Defendants sell nearly all the Pool Products necessary to operate and maintain a pool.

35.     Distributors generally carry all brands of Pool Products across all manufacturers to satisfy any and all orders from Dealer customers.  It is necessary to sell the products of at least

one of the Manufacturer Defendants to be able to compete effectively as a distributor.  The products of these Manufacturer Defendants are "must have" products for wholesale distributors because of the volume of products they represent and the considerable consumer demand for their products.  A positive relationship with these three Manufacturer Defendants and others is critical to the success of a Pool Products Distributor.

36.     In general, manufacturers are willing to sell their products through any credit worthy distributor that has a physical warehouse and personnel with knowledge of the pool industry.  Manufacturers typically prefer to have two or more distributors selling their products to ensure that their Dealer customers receive competitive prices and services.

37.     Manufacturers advertise and promote their products directly to Dealers to create pull-through demand at the distribution level, and also offer year-end rebates to distributors based on the volume of a distributor's purchases.  These year-end rebates represent an important component of the ultimate price paid by distributors for Pool Products.  Failure to qualify for these rebates can have a substantial detrimental impact on a distributor's ability to compete on price.

38.     Distributors provide one-stop shopping, timely delivery and the extension of credit to Dealers, thereby providing Dealers and manufacturers with significant transactional efficiencies.  Additionally, Dealers often help manufacturers administer their rebate and warranty programs, and provide expertise to answer Dealer's product-related questions.

39.     While manufacturers make a small amount of direct sales to larger Dealers, they cannot easily expand their operations into distribution because of the costs, their lack of expertise in distribution, and the difficulty of obtaining products to distribute from competing

manufacturers.  Distributors are the only available source of Pool Products for the vast majority of Dealers, which are generally small operations that lack the resources and customer base to purchase Pool Products in volume directly from manufacturers.

40.     Collectively, the Manufacturer Defendants represent more than 50 percent of sales of Pool Products at the wholesale distribution level in the United States.  There are other Pool Product manufacturers of smaller size, offering much narrower product lines.

41.     While distributors generally endeavor to carry a wide-range of brands of Pool Products to satisfy orders from their Dealer customers, the Pool Products of the Manufacturer Defendants are "must have" inputs for wholesale distributors because of the volume of Pool Products that they represent, the breadth of their product offerings, and the considerable consumer demand for their Pool Products that Dealers strive to satisfy.  To compete effectively as a distributor, besides carrying a wide range of product lines generally, it is also essential to sell the Pool Products of the Manufacturer Defendants.   A positive relationship with these Manufacturer Defendants is critical to the success of a Pool Products distributor.

42.   The nature of the industry places high value on distributors that can provide the broadest range of Pool Products, representing as many manufacturers as quickly and conveniently as possible.   Among those purchasing Pool Products are Dealers such as pool builders, renovators, repairers, and servicers.  These direct purchasers need products on a timely basis to get a job done as quickly as possible for their own residential and commercial customers -- indirect purchasers.  Distributors that do not have specific products available, made by specific manufacturers, especially the Manufacturer Defendants, can suffer reputational harm because

13

they are not viewed as reliable sources from which to purchase.  Similarly, distributors with the most locations benefit from the urgency inherent in the pool business.

43.     In a free and competitive market, manufacturers would be willing to sell their Pool Products through any credit-worthy distributor that has a physical warehouse and personnel with knowledge of the pool industry, as distribution services are a relatively homogenous offering.  Manufacturers typically would prefer to have two or more distributors selling their Pool Products to ensure that their Dealer customers receive competitive service and prices.

## II.   PoolCorp's Market Dominance and Attempted Monopoly Activities in the Pool Distribution Markets in the United States.

44.     PoolCorp is the world's largest distributor of Pool Products, and operates over half of all pool distribution facilities in the United States.  *PoolCorp Annual 10K 2010*. According to *Zacks Investment Research*, Defendant PoolCorp has a dominant market position by reason of its market share in the Pool Products Distribution Market.  In 2011, PoolCorp had roughly $1.8 billion in net sales revenue.

45.     PoolCorp prices its products on a national basis and controls its pricing from its headquarters.  Manny Perez, PoolCorp's President and Chief Executive Officer, controlled pricing from headquarters.  PoolCorp's pricing system, known as "Prelude," is used by all PoolCorp branches and sales centers.  PoolCorp uses the Prelude system to direct pricing from its headquarters throughout the United States and to monitor the destination of product Stock-Keeping-Units or SKUs.  Perez and John Murphy, a PoolCorp executive, regularly sent pricing e-mails to all PoolCorp General and Senior Managers throughout the United States.

46.     Defendant PoolCorp purchases Pool Products directly from manufacturers and then sells them to Dealers, who then sell the Pool Products to indirect consumers who own the

residential or commercial swimming pools, such as Plaintiffs and Class Members.  According to the same research firm, PoolCorp uses its significant purchasing power in the market for Pool Products to obtain better price and credit terms than others, thereby adding value to its customers' businesses.

47.    Unlike other distributors of Pool Products that operate in a few local markets or a specific region, Defendant PoolCorp is the only U.S. distributor to operate nationwide. According to an October 25, 2011 report issued by *Zacks Investment Research*, Defendant PoolCorp is the only truly national wholesale distributor focused on the Pool Product Distribution Market in the United States.

48.    Through a series of acquisitions, Defendant PoolCorp has grown to operate over 200 distribution or sales centers throughout the United States.  Defendant PoolCorp operates through Defendant SCP 7 sales centers in Arizona, 24 distributors in California, 31 in Florida, and 3 in Missouri.  Defendant PoolCorp operates through Defendant Superior 4 sales centers in Arizona, 21 in California, 6 in Florida, and 1 in Missouri.  In contrast, the next largest U.S. distributor operates less than 40 distribution centers.  In 2010, Defendant PoolCorp had roughly $1.5 billion in net sales revenue.  *Pool Corporation Annual 10K 2010.*

49.    Defendant PoolCorp's unlawful conduct have enabled it to maintain its market dominance and to attempt to possess monopoly power in the Pool Products Distribution Market in the United States.

50.    According to Defendant *PoolCorp's 2010 Annual 10K*, "The company's primary markets, which have the highest concentration of swimming pools are California, Florida, Texas

and Arizona, representing approximately 50% of our net sales in 2010."   Defendant PoolCorp sold approximately $750 million of Pool Products in 2010 in these four states.

51.    Defendant PoolCorp has even greater market dominance and attempted monopoly power in numerous local geographic markets across the country, including among others: Alabama, Louisiana, Missouri, Oklahoma, Tennessee, and Texas.   In these geographic markets, Defendant PoolCorp is the only or the most dominant distributor in the area, and has maintained a market share of approximately 80 percent or higher for at least the past five years.

52.    Defendant PoolCorp's dominance in these markets is enhanced by its status as the largest nationwide buyer of Pool Products, often representing 30 to 50 percent of a manufacturer's total sales.   Defendant PoolCorp obtains a significant competitive advantage in the downstream market by qualifying for large volume discounts from manufacturers that are not available to any other distributor.

53.    Defendant PoolCorp's anticompetitive conduct and unfair practice of foreclosing new entrant distributors from obtaining Pool Products directly from manufacturers, which are a necessary input to compete, represents a significant barrier to entering the Pool Products Distribution Market in the United States.   The Manufacturer Defendants entered into unlawful vertical agreements with PoolCorp, and these agreements have assisted PoolCorp in its unfair practices and attempted monopoly conduct during the Class Period.

**III.    PoolCorp's Exclusionary and Unfair Practices.**

54.    Beginning as early as 2003, Defendant PoolCorp has engaged in unfair practices and anticompetitive conduct by foreclosing access to essential inputs and impeding market entry by potential new entrant distributors into the Pool Products Distribution Market.   Defendant

PoolCorp's conduct was intended to and effectively does enable it to improperly maintain and enhance its market dominance in the Pool Products Distribution Market.  Defendant PoolCorp's conduct has caused injury to competition and to ultimate consumers, such as Plaintiffs and Class Members.

55.     According to the Federal Trade Commission Complaint, Defendant PoolCorp's conduct of foreclosing new entrant distributors from obtaining Pool Products directly from Pool Products manufacturers represents a significant barrier to entry in the Pool Products Distribution Market.

### A.     PoolCorp Engaged in an Aggressive Acquisition Strategy to Purchase Competitors and Obtain Attempted Monopoly Status.

56.     Defendant PoolCorp achieved its market dominance and attempted monopoly status by aggressively targeting and acquiring distributor competitors in order to expand its market share in the Pool Products Distribution Market.  Since 1995, Defendant PoolCorp has acquired at least 12 competitors:

- In December 1995, PoolCorp acquired Allied Pool & Spa, a leading distributor of Pool Products in Nevada and Arizona.

- In July 1996, PoolCorp acquired 39 service centers from Great Lakes Chemical Corp's Biolab Inc. unit, a Pool Products distributor.  At the time of the acquisition, PoolCorp stated that "the transaction will expand its geographic presence, particularly in Florida, California, and Arizona."[8]

- In November 1997, PoolCorp acquired the assets of Bicknell Huston Distributors, Inc., a distributor of Pool Products through eleven service centers in six states in the Northeast.

- In February 1998, PoolCorp acquired certain assets of Valve Engineering Acquisition company, a privately-owned distributor of Pool Products located in Glendale California.  At the time of the acquisition, the Chairman of PoolCorp stated that "this

---

[8] SCP Pool Corporation's 1996 Quarterly Report (Form 10-Q) (filed August 7, 1997) at 6.

transaction offered the opportunity to increase our market penetration in the greater Los Angeles area."[9]

- In January 1999, PoolCorp acquired substantially all of the assets of Bensen Pump Company, a privately-owned Pool Products supplier with 20 service centers in 14 states.

- In August 2000, PoolCorp acquired substantially all of the assets of Superior Pool Products, Inc., a distributor of Pool Products with a network of 19 service centers in California, Arizona and Nevada.  At the time of this acquisition, the President of PoolCorp touted the company's aggressive acquisition strategy saying "this transaction extends our established strategy of complementing the company's ongoing internal growth through the purchase of additional service centers."[10]

- In January 2001, PoolCorp acquired substantially all of the assets of Hughes Supply, Inc., a Pool Products company with 31 service centers in the eastern half of the United States.

- In August 2002, PoolCorp acquired Fort Wayne Pools, Inc. ('FWP"), a large regional Pool Products distributor with 22 service centers across 16 states.  According to the Federal Trade Commission's complaint, "FWP was PoolCorp's then-largest, and sometimes only, competitor."

- In September 2003, PoolCorp acquired substantially all of the assets of Litehouse Products, Inc.'s distribution division.  Litehouse's primary business was the retail sales of swimming pool and other leisure products through 27 stores in Ohio, Pennsylvania and Michigan.

- In November 2005, PoolCorp announced the acquisition of the assets of Direct Replacements, Inc., a Marietta, Georgia packaged pool distributor.

- In March 2008, PoolCorp acquired National Tile Group, Inc., a wholesale distributor of pool tile and composite pool finishes.

---

[9] SCP Pool Corporation Acquires Additional Service Center: Transaction Expands California Locations to 14, BUSINESS WIRE, Feb. 19, 1998, available at http://www.thefreelibrary.com/SCP+Pool+Corporation+Acquires+Additional+Service+Center%3B+Transaction...-a020313598. (last visited August 17, 2012)

[10] *SCP Pool Corporation Acquires 19 Additional Service Centers; Acquisition Expected to Increase Market Penetration*, BUSINESS WIRE, Aug. 1, 2000, available at http://www.thefreelibrary.com/SCP+Pool+Corporation+Acquires+Additional+Service+Center%3B+Transaction...-a063784252  (last visited August 17, 2012)

- In October 27, 2009, PoolCorp announced the acquisition of California pool and spa products distributor, General Pool & Spa Supply, Inc.

57. Consistent with PoolCorp's exclusionary and unfair practices, it aggressively targets and eliminates any competitors it sees as a competitive threat. For example, soon after acquiring FWP, PoolCorp closed the FWP distribution facility in Baton Rouge. This left PoolCorp as the only remaining distributor in the area, thereby enabling it to impose a five percent price increase.

**B.      PoolCorp Secured Agreements From Pool Products Manufacturers - Including the Manufacturer Defendants - to Eliminate PoolCorp's Competitors**

58. PoolCorp not only dwarfs its nearest competitors in size, it has used its dominance to attempt to possess monopoly power by conditioning access to its distribution network on agreements not to supply its distribution rivals -- that is, by requiring Pool Products manufacturers, including the Manufacturer Defendants, to agree to exclude PoolCorp's rivals. Because of PoolCorp's national presence and purchasing clout, Pool Product manufacturers take PoolCorp's demands quite seriously and fear losing business if they do not comply with PoolCorp's wishes and agree to exclude PoolCorp's competitors.

59. According to a former Marketing Sales Representative at PoolCorp, many manufacturers believe that if they did not do what PoolCorp demanded PoolCorp would terminate its purchases from that manufacturer and obtain its Pool Products from competing manufacturers. Indeed, several manufacturers personally told this Sales Representative that if they did not accept PoolCorp's pricing or proposed exclusionary arrangements, PoolCorp would hurt their business by obtaining Pool Products from rival manufacturers.

19

60.     Through various agreements with manufacturers, including the Manufacturer Defendants, and other business practices, PoolCorp has foreclosed competition by existing distributors and would-be new entrants by preventing these actual and potential rivals from purchasing Pool Products directly from manufacturers.   For example, when a new distributor attempted to enter a particular geographic area, PoolCorp told manufacturers that it would not deal with them if they also supplied Pool Products to the new entrant.   PoolCorp's threatened refusal to distribute the manufacturer's Pool Products applied to *all* of PoolCorp distribution centers located throughout the United States - not just those centers covering the geographic area that the new entrant sought to serve.   PoolCorp took similar steps to restrain competition by existing distributors.  Examples of PoolCorp's conduct are detailed below.

### 1.      PoolCorp's Preferred Vendor Program

61.     PoolCorp reinforced its market power using its "Preferred Vendor Program," which it began in 1999.  PoolCorp worked with its Preferred Vendors to develop programs and services that not only concentrated on PoolCorp's purchasing activities, but that also promoted the manufacturer's sales to PoolCorp customers.   Among other things, PoolCorp provided PoolCorp's Preferred Vendors with advertising and marketing programs, and product support generally, in an effort to increase the vendor's brand recognition to purchasers of Pool Products.

62.     Part of the reason that PoolCorp created the program was to encourage PoolCorp's buyers to purchase products from a smaller number of vendors.   PoolCorp employees were encouraged not to purchase from manufacturers who were not in the Preferred Vendor Program. In turn, PoolCorp conditioned manufacturer participation in its Preferred Vendor Program on receiving acceptable pricing and rebate commitments from the manufacturer.   The program was

also designed to encourage manufacturers to use PoolCorp as their preferred distributor of Pool Products.

63.     PoolCorp selected those manufacturers that participated in the Preferred Vendor Program, and it also had the right to terminate a manufacturer's participation.  In addition to the Manufacturer Defendants, virtually all of the other major Pool Products' manufacturers were members of the PoolCorp Preferred Vendor Program.

64.     The Preferred Vendor Program was headed by John Murphy, a PoolCorp executive, who established about a dozen purchasing committees covering various product groups, which became known as "Murphy's committees."  As Murphy stated, one purpose of the Preferred Vendor Program was to "instill more discipline."  PoolCorp achieved this discipline by informing the manufacturers, including the Manufacturer Defendants, that were members of the Preferred Vendor Program that they were not to sell Pool Products to rival distributors if PoolCorp so directed.  A Preferred Vendor's failure to agree to PoolCorp's instruction meant that PoolCorp could drop the manufacturer from the Preferred Vendor Program.  PoolCorp similarly used manufacturer Preferred Vendor status to eliminate price competition by rival distributors.  If a rival distributor sold the product of a PoolCorp Preferred Vendor at prices below the price sought by PoolCorp, PoolCorp called on the Preferred Vendor to agree to stop the rival's pricing. Murphy and his group vetted Preferred Vendors so that PoolCorp could control their actions when it sought to do so to disadvantage rival distributors.

65.     Because of PoolCorp's dominant position as the only national distributor of Pool Products, it was essential for product manufacturers to become members of PoolCorp's Preferred Vendor Program, and to remain in the Program.  Although a vendor could attempt to reach

Dealers and users through direct sales, thus bypassing PoolCorp's distribution network, as noted earlier, various considerations discouraged manufacturers from engaging in direct distribution. Furthermore, PoolCorp has used its Preferred Vendor Program to assert to members that they refrain from direct sales to customers in competition with PoolCorp, and instead sell only through PoolCorp.

66.    PoolCorp used its Preferred Vendor Program, together with its power as a national distributor, to exclude competition from actual and potential distributors seeking to compete in distributing Pool Products to direct purchasers.   More specifically, when a new distributor attempted to enter a particular geographic area, or when PoolCorp sought to eliminate an existing distributor, PoolCorp told manufacturers, including the Manufacturer Defendants, that it would drop them as a Preferred Vendor and not deal with them if they also supplied Pool Products to the rival.   PoolCorp's threatened refusal to distribute the manufacturer's Pool Products applied to all of PoolCorp's distribution centers located throughout the United States -- not just those centers covering the geographic area that the rival did business or sought to enter.

67.    For a manufacturer, the loss of Preferred Vendor status as well as the loss of PoolCorp's purchases generally would be economically disadvantageous -- and particularly so for the three Manufacturer Defendants.   No other distributor could replace PoolCorp's large volume of purchases, or offer the geographic coverage nationally that PoolCorp provided.

68.    PoolCorp directed such refusals to deal, and its Preferred Vendors -- including the Manufacturer Defendants -- agreed to implement them.   As a result, PoolCorp's actual and potential competitors were foreclosed from obtaining the Pool Products necessary to compete on sales to direct purchasers.   This resulted in higher Pool Product prices to direct purchasers who

passed on those higher prices to Plaintiffs and Class Members. PoolCorp's actions also reduced choices of Pool Products offerings to direct and indirect purchasers. Therefore, PoolCorp was able to condition a manufacturer's Preferred Vendor status on the manufacturer's refusal to sell to other distributors when PoolCorp called for such action.

69.     PoolCorp's actions described above occurred throughout the United States during the Class Period. Due to its national distribution network and Preferred Vendor Program, PoolCorp was able to drive distribution rivals out of business or to significantly impair their ability to compete. The following are several examples.

### 2.     Foreclosure of PoolCorp's Rivals

70.     In early 2003, Hilton Distribution, a PoolCorp rival, opened in Baton Rouge, Louisiana. The owners of Hilton previously operated as a Dealer, which purchased Pool Products from PoolCorp. After opening at the distribution level, however, Hilton repeatedly had difficulty securing suppliers and having its orders filled on a consistent basis. By agreements with PoolCorp, the Manufacturer Defendants and other Pool Products manufacturers refused to sell the supplies that Hilton needed.

71.     Hilton's owner learned from various manufacturers that Kenneth G. St. Romain, PoolCorp's Group Vice President, and Tom Canaday, General Manager of PoolCorp's Central Division, had contacted manufacturers, including the Manufacturer Defendants. If those manufacturers failed to comply with its warnings, PoolCorp told them it would terminate its purchases and sales of their Pool Products. The Manufacturer Defendants agreed with PoolCorp not to sell to Hilton. Hilton's owner contacted PoolCorp to complain, and they responded that it was just business.

72.     Indeed, shortly after Hilton opened in the spring of 2003, PoolCorp executives visited their facilities and were shown around.   Among the products on site observed by PoolCorp executives were a line of custom-molded plastics for pool use, which the manufacturer also sold to PoolCorp.  Soon after PoolCorp visited Hilton, the product manufacturer told Hilton that it could not sell to the company.   In yet another instance, a California company that manufactured pool brushes and vacuum hoses told Hilton that PoolCorp promised a large order if the company refrained from filling an order from Hilton.  At the time, PoolCorp did not even purchase from the California company.

73.     Having prevented Hilton from competing, PoolCorp offered to purchase what remained from the Hilton owners.   Instead, in December, 2005, Hilton owners sold the company's assets to a regional pool distributor, W.W. Adcock, based in Pennsylvania.

74.     PoolCorp similarly used its exclusionary agreements with members of its Preferred Vendor Program to drive another distributor of Pool Products in the Midwest out of business.  The Midwest distributor was told by Preferred Vendors, including the Manufacturer Defendants, that they could not sell its Pool Products because of PoolCorp's restrictions.  Indeed, Hayward's Director of National Accounts, Carlo Buffa, told the Midwest company that Hayward could not sell to the Midwest company because of its agreement with PoolCorp, even though Hayward sold almost nothing in the Midwest company's region.

75.     Another distributor of Pool Products in Indiana, Only Alpha Pool Products ("Only Alpha"), was also the victim of PoolCorp's exclusionary arrangements with suppliers. PoolCorp's Preferred Vendors told Only Alpha that they could not sell to Only Alpha because of PoolCorp's restrictions.  Among others, Carlo Buffa, Jack Mayer and Bruce Fisher of Hayward,

Vincent Gillette of Zodiac, and Dave Murphy, Bill Whitehurst and Gary Golden of Pentair, all refused to sell products to Only Alpha pursuant to the Manufacturer Defendants' agreement with PoolCorp.  In 2009, Only Alpha attempted to purchase products through Care Craft, a buying group based in California.  Only Alpha received an e-mail form Greg Howard, a Care Craft executive, stating that before agreeing to supply any products to Only Alpha, he first needed to check with Dave Cook, a PoolCorp Vice President of Purchasing.  At that time, PoolCorp had no interest in the Care Craft buying group.

76.     Pool Source, a distributor of Pool Products in Nashville, Tennessee, was yet another victim of Pool Corp's exclusionary agreement with members of its Preferred Vendor list. Pool Source was informed that PoolCorp had sent letters to at least 25 vendors, including the Manufacturer Defendants, directing them not to sell Pool Products to Pool Source.  Because of these agreements between PoolCorp and vendors, including the Manufacturer Defendants, Pool Source was unable to do business with the industry's leading manufacturers, including the Manufacturer Defendants.  In an effort to stay in business, Pool Source had to buy products through third parties, and pay an extra five percent on top of freight charges.

77.     ATX Pool & Supply LLC ("ATX"), an Austin, Texas distributor of Pool Products, was another victim of the exclusionary agreements among PoolCorp and its Preferred Vendors, including the Manufacturer Defendants.  ATX learned from vendors whom it had known for a year that Paul Walter, PoolCorp's Regional Manager in San Antonio, and Mike O'Neill, also of PoolCorp, had told vendors that if they sold to ATX, PoolCorp would send their products back.  As recounted by Bill Knox, the President of WEK & Associates, Inc., a Pool Products manufacturer's sales representative based in Texas, Walter and O'Neill said that ATX

was not to receive Pool Products.  Members of PoolCorp's Preferred Vendor list, including the Manufacturer Defendants, refused to sell to ATX, and it was unable to buy the products it needed to continue in business.

78.     In 2009, Gulf Coast Supply ("Gulf Coast") began distributing Pool Products in Naples, Florida.  PoolCorp drove Gulf Coast out of business by directing and agreeing with PoolCorp's Preferred Vendors not to supply Gulf Coast with any of their products.  The Manufacturer Defendants were among those who agreed with PoolCorp not to sell to Gulf Coast to retain their status on PoolCorp's Preferred Vendor list.  One member of PoolCorp's Preferred Vendor Program, Brenntag, informed Gulf Coast that it could not supply Gulf Coast because PoolCorp threatened to drop Brenntag as a Preferred Vendor if Brenntag sold products to Gulf Coast.  Another manufacturer, Aquastar, told Gulf Coast that PoolCorp delivered the same message -- PoolCorp would drop Aquastar as a Preferred Vendor if Aquastar sold to Gulf Coast.

79.     PoolCorp's exclusionary conduct tended to target new entrants, rather than established rivals.  New entrants represented a unique threat to PoolCorp because they were more likely to compete aggressively on price to earn new business.  Existing competitors whom PoolCorp targeted faced similar difficulties in securing alternative suppliers.  They too had to search out other distributors willing to sell in the "gray" market at higher prices and with added freight charges.

80.     Faced with the inability to obtain Pool Products from manufacturers, including the Manufacturer Defendants, some existing distribution rivals and new entrants sought to purchase Pool Products from other distributors, effectively paying two markups -- one by the manufacturer and another by the distributor.  But as a general rule, distributors will not sell Pool Products to

other distributors.  Even when they do, this sourcing alternative is not a viable long-term strategy because it substantially increases a distributor's costs and lessens its quality of service.

81.     For example, buying Pool Products from an existing distributor forces the existing distributor or new entrant to pay transportation costs from the distributor's location, rather than receiving shipping under manufacturer programs.  These higher costs prevent the rival distributor from being able to compete aggressively on price.  Additionally, the availability of product from an existing distributor could be uncertain or subject to volume limits.  As a consequence, this inefficient work around means that the rival lacks full control of its inventory, which hampers the rival's ability to provide timely and quality service to its Dealer customers.  Further, purchases from other distributors do not qualify for manufacturer rebate programs, thus again putting rivals at a pricing disadvantage.

82.     Foreclosing actual and potential distribution rivals from access to a substantial share of manufacturers produces anticompetitive effects when, as here, the ability of rivals to acquire key inputs -- in this case, Pool Products -- raises their costs of doing business.  PoolCorp's exclusionary conduct, in which the Manufacturer Defendants participated, denied actual and potential rival distributors necessary inputs directly from Pool Product manufacturers and lessened their ability to act as a constraint on PoolCorp's pricing.  This conduct was designed to, and did, allow PoolCorp to maintain its dominance in the industry.

### 3.     Other Anticompetitive Agreements and Conduct

83.     PoolCorp entered into agreements with certain vendors, which required the vendor to sell exclusively to PoolCorp and which foreclosed competition from rival distributors.  For example, in the mid-2000's, Mareva, a Crestview, Florida manufacturer of specialty

chemicals, used for pool sanitizing, entered an agreement with PoolCorp.  At PoolCorp's insistence, Mareva agreed not to sell to any other Pool Products distributor, and later contract renewals continued this exclusivity with PoolCorp.  Although other distributors sought to purchase from Mareva, Mareva was unable to sell to them.  Because of the uniqueness of Mareva's specialty products, sometimes PoolCorp rivals had no alternative supplier source, and therefore had to do without the product.

84.     Of PoolCorp's roughly 200 sales branches, only a small fraction purchased Mareva's product, and Mareva would have preferred to use other distributors to obtain broader market penetration.  It could not do so, however, without risking loss of PoolCorp's business, which represented a significant part of Mareva's sales, or risking even less advantageous terms with PoolCorp when its supply agreement came up for renewal.  In effect, Mareva was locked in; PoolCorp's rivals were locked out.

85.     In addition, during the summer of 2003, Manny Perez, President and Chief Executive Officer of PoolCorp, learned that another distribution competitor, Baystate, was opening a facility in northern New Jersey.  In August 2003, Perez wrote an e-mail to all PoolCorp General Managers instructing Murphy to contact Mark Lavin, an executive at Pacific Pools, a PoolCorp Preferred Vendor, to remind him that PoolCorp had the exclusive distribution rights for Pacific's products, and to instruct Lavin not to sell Pacific's products to Baystate. Pacific Pools agreed to stop selling.

86.     If PoolCorp learned that a competing distributor was undercutting PoolCorp's prices, PoolCorp used the leverage of its Preferred Vendor Program to eliminate such price competition.  For instance, in 2003, Perez and Murphy learned that a PoolCorp competitor,

Imperial, was selling Hayward products below PoolCorp's prices for the items.  In February 2003, Perez wrote an e-mail to all PoolCorp General Managers instructing them to inform headquarters if Imperial continued to offer low prices for Hayward products.  Perez also communicated with Carlo Buffa of Hayward, and Hayward agreed to have Imperial rescind its low price quotes.  Imperial subsequently rescinded its low quotes.

87.     PoolCorp also entered into agreements with rival distributors to refrain from competing with each other.  For instance, in 2002, PoolCorp executives Perez and Murphy met with Skip Bradley and Terry Maurer of Cardinal Systems, located in Schuylkill Haven, Pennsylvania.  Cardinal Systems manufacturers and sells steel pools and panels, and supplies aluminum coping used in pools.  As a result of the meeting, PoolCorp and Cardinal Systems agreed not to compete for each other's customers on products that they both sold.

88.     PoolCorp's agreements with Preferred Vendors and other manufacturers typically included a "most favored nations" or "MFN" provision, by which the supplier agreed to give PoolCorp prices, rebates, and other terms and conditions of sale that were at least as favorable as those that the supplier made available to other Pool Products purchasers with the same or similar volume levels as those of PoolCorp.  Thus, if a manufacturer gave a PoolCorp rival more favorable pricing, it also had to make the same pricing available to PoolCorp.

89.     Because PoolCorp was the highest volume customer for many manufacturers, the MFN reduced the incentive for manufacturers to sell to PoolCorp's rivals under pricing terms that allowed the rivals to engage in price competition.  Once the manufacturer provided PoolCorp with the same favorable pricing that the PoolCorp rival received, the rival was unlikely

to capture sales from PoolCorp.  At the same time, the manufacturer itself would receive lower revenue from both PoolCorp and the rival.

90.     As a result, PoolCorp's MFN operated to suppress price competition from rivals. In turn, PoolCorp's customers -- direct purchasers -- were denied the opportunity to shop for lower prices from other distributors.   PoolCorp's own attempted monopoly position was maintained.

91.     Defendants' aforementioned conduct had the specific purpose and effect of not only restraining trade in the distribution of Pool Products, but also of maintaining and enhancing PoolCorp's attempts to possess monopoly power.  Defendants' conduct resulted in higher prices for direct and indirect purchasers and in reduced output.  Also, by denying supplies to rivals, Defendants' conduct reduced the opportunities of PoolCorp's rivals to develop particular Pool Product offerings and terms of sale to attract business.  Thus, direct and indirect purchasers had fewer choices.

92.     Based on anticompetitive conduct involving the distribution of Pool Products, the Federal Trade Commission began an investigation, which culminated in a negotiated consent decree directing PoolCorp to refrain from engaging in certain anticompetitive tactics, including "[c]onditioning the sale, purchase, or Distribution of Pool Products by [PoolCorp], or a Manufacturer's Preferred Vendor status, based on a Manufacturer's sale, or an intention to sell Pool Products to any Distributor other than [PoolCorp]."[11]

### IV.     PoolCorp's Unfair Practices Have Recently Been the Subject of a Federal Trade Commission Consent Decree.

93.     On November 21, 2011, the Federal Trade Commission issued a complaint (the

---

[11] *In the Matter of Pool Corporation,* Decision and Order, FTC File No. 101 0115, at 4.

"FTC Complaint") and a proposed Consent Order ("Consent Order") against Defendant

PoolCorp for violation of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45.  *See*

*In the Matter of Pool Corporation*, FTC File No. 101 0115.

94.     The FTC Complaint states:

> This action addresses PoolCorp's exclusionary acts and practices in the market for
> the distribution of residential and commercial swimming pool products.
> PoolCorp has unlawfully maintained its monopoly power by threatening to refuse
> to deal with any manufacturer that sells its pool products to a new distributor
> entering the market, thereby foreclosing potential rivals from an input necessary
> to compete.  PoolCorp's conduct deters and impedes entry, raises its rivals' costs,
> and results in higher prices, reduced output and less consumer choice.

95.     The FTC Complaint alleges that "beginning in 2003 and continuing to today,

PoolCorp has implemented an exclusionary policy that effectively impeded entry by new

distributors by preventing them from being able to purchase pool products directly from

manufacturers."  Specifically, when a new distributor attempted to enter the market, Defendant

PoolCorp threatened manufacturers that it would not deal with them if they also supplied the new

entrant distributor.  Defendant PoolCorp threatened to terminate the purchase and sale of the

manufacturer's Pool Products for all 200+ PoolCorp distribution centers located throughout the

United States.

96.     As part of the Consent Order Defendant PoolCorp agreed to cease and desist from

certain exclusionary acts and unfair practices, including (a) conditioning the sale or purchase of

Pool Products, or membership in PoolCorp's Preferred Vendor programs, on the intended or

actual sale of Pool Products by a manufacturer to any other distributor than PoolCorp; (b)

pressuring, urging or otherwise coercing manufacturers to refrain from selling, or to limit their

sales to any distributors other than PoolCorp; and (c) discriminating or retaliating against a

manufacturer for selling, or intending to sell, Pool Products to any distributor other than PoolCorp.

97.     Under the Consent Order, Defendant PoolCorp is required to implement an antitrust compliance program and is subjected to other antitrust compliance requirements.  The Order will last for 20 years.

### EFFECTS AND INJURY

98.     PoolCorp has purchased one rival after another over a period of more than ten years.  In addition, through its agreements with the Manufacturer Defendants, PoolCorp has used its power in the Pool Products Distribution Market to foreclose existing distributors and entrants from obtaining necessary supplies from a substantial share of manufacturers, and from competing generally on sale to direct purchasers.

99.     In antitrust cases concerning foreclosures of rivals, the share of a given market or distribution channel foreclosed by the conduct at issue is a significant consideration.  Antitrust authorities have concluded that foreclosure of a given percentage, typically between 20 and 40 percent, may be presumed to have anticompetitive effects.  PoolCorp rivals who were denied access to the Pool Products of the Manufacturer Defendants alone were foreclosed at levels far above 40 percent.

100.    The effects of Defendants' anticompetitive conduct have been to enable PoolCorp to unlawfully attempt to possess monopoly power in the Pool Products Distribution Market in the United States.   Further, Defendants' conduct has substantially impaired and foreclosed competition from PoolCorp's rivals in the Pool Products Distribution Market, and significantly raised barriers to entry for potential rivals seeking to distribute Pool Products in the United

States. They also have enabled PoolCorp to establish and maintain artificially high, supra-competitive prices for Pool Products sold generally and specifically to direct and to indirect purchasers, such as Plaintiffs and Class Members.

101. Defendants' conduct had the purpose, capacity, tendency, and effect of impairing competition by PoolCorp's distribution rivals, of raising such rivals' costs, and of deterring and impeding their market entry. Defendants' unlawful conduct has contributed significantly to PoolCorp's unlawful attempt to possess monopoly power.

102. Defendants' conduct adversely affected competition and consumers in the United States including Arizona, California, Missouri, and Florida by: (a) increasing or maintaining prices for Pool Products at artificially high levels; (b) reducing the output of Pool Products; (c) eliminating or significantly reducing price competition for Pool Products sold by distributors; (d) deterring, delaying and impeding the ability of actual or potential competitors seeking to enter or to expand their distribution of Pool Products; and (e) reducing the choices of Pool Products offerings available to direct purchasers, and end-users, such as Plaintiffs, generally.

103. Absent Defendants' illegal conduct and the substantial foreclosure and reduction of effective competition caused by such conduct, PoolCorp would have faced greater competition and reduced the prices that it charged for Pool Products purchased by direct purchaser retail dealers and service companies.

104. Moreover, had actual or potential Pool Product distributors not been prevented by Defendants' illegal conduct from competing in the distribution of Pool Products, those actual or potential competitors would have sold more Pool Products and achieved economies of scale and

scope that could have further driven down prices for Pool Products sold to direct and indirect purchasers.

105.   By unlawfully excluding, impairing, and otherwise restricting competition, Defendants' conduct has caused direct and indirect purchasers to pay higher prices to purchase Pool Products than they otherwise would have paid absent Defendants' unlawful conduct.

106.   In their "Statement of Commissioners Julie Brill, Jon Leibowitz and Edith Ramirez Regarding The Complaint and Proposed Consent Order in *IN RE POOL CORPORATION*," dated November 21, 2011, the three Federal Trade Commissioners observed:

> The higher cost structure PoolCorp imposed on new entrants prevented them from providing a competitive constraint to PoolCorp's alleged monopoly prices.  And without full control of their inventory, the new distributors' ability to provide high quality service to their dealer customers was diminished.  The harm to consumers that occurred as a result was substantial.  In the end, consumers had fewer choices and were forced to pay higher prices for pool products.

107.   By reason of the Defendants' unlawful conduct, Plaintiffs and Class Members in Arizona, California, Florida, and Missouri have sustained injury to their business or property during the Class Period.  The injury sustained by Plaintiffs and Class Members is the payment of higher prices for Pool Products as a direct result of Defendants' unlawful conduct as alleged herein during the Class Period.

108.   There is a direct, measurable, and traceable link between Defendants' prices of Pool Products to its direct purchasers during the Class Period period and the prices that Plaintiffs and Class Members indirectly paid in Arizona, California, Florida, and Missouri for such Pool Products.  Defendants' unlawful conduct caused prices paid for Pool Products by Plaintiffs and Class Members to be inflated.  Plaintiffs and Class Members suffered losses and damages as a

result of Defendants' illegal practices.  The amount of such damages in Arizona, California, Florida, and Missouri is presently undetermined.

## CLASS ACTION ALLEGATIONS

109.    Plaintiffs bring this action on their own behalf and as class actions on behalf of indirect purchasers in Arizona, California, Florida, and Missouri pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following classes:

### Arizona Indirect Purchaser Class

All individuals and entities residing in Arizona who indirectly purchased and not for resale swimming pool products sold by Pool Corporation, SCP Distributors LLC, Superior Pool Products LLC, Hayward, Industries, Inc., Pentair Water and Pool Spa, Inc., and Zodiac Pool Systems, Inc. from January 1, 2008 through the present.

Excluded from the Class are Defendants and their subsidiaries, or affiliates, whether or not named as a Defendant in this Complaint, and governmental entities or agencies.

### California Indirect Purchaser Class

All individuals and entities residing in California who indirectly purchased and not for resale swimming pool products sold by Pool Corporation, SCP Distributors LLC, Superior Pool Products LLC, Hayward, Industries, Inc., Pentair Water and Pool Spa, Inc., and Zodiac Pool Systems, Inc. from January 1, 2008 through the present.

Excluded from the Class are Defendants and their subsidiaries, or affiliates, whether or not named as a Defendant in this Complaint, and governmental entities or agencies.

### Florida Indirect Purchaser Class

All individuals and entities residing in Florida who indirectly purchased and not for resale swimming pool products sold by Pool Corporation, SCP Distributors LLC, Superior Pool Products LLC, Hayward, Industries, Inc., Pentair Water and Pool Spa, Inc., and Zodiac Pool Systems, Inc. from January 1, 2008 through the present.

Excluded from the Class are Defendants and their subsidiaries, or affiliates, whether or not named as a Defendant in this Complaint, and governmental entities or agencies.

### Missouri Indirect Purchaser Class

All individuals and entities residing in Missouri who indirectly purchased primarily for personal, family, or household purposes, and not for resale swimming pool products sold by Pool Corporation, SCP Distributors LLC, Superior Pool Products LLC, Hayward, Industries, Inc., Pentair Water and Pool Spa, Inc., and Zodiac Pool Systems, Inc. from January 1, 2008 through the present.

Excluded from the Class are Defendants and their subsidiaries, or affiliates, whether or not named as a Defendant in this Complaint, and governmental entities or agencies.

110.    The Class in each state above is individually so numerous that joinder of all Class Members is impracticable.  At the present time, Plaintiffs do not know the exact size of the Classes in Arizona, California, Florida, or Missouri.  However, due to the nature of the trade and commerce involved, there are thousands of Class Members, geographically dispersed throughout Arizona, California, Florida, and Missouri such that joinder in each class is impractical. Plaintiffs reasonably believe that the identities of Class Members in each state can be learned from the records of Defendants, retail dealers or service companies who sold Pool Products to Class Members.  When product warranties were registered on Pool Products, Class Members can be identified from records of the Manufacturer Defendants.  Additionally, sales tax receipts are generally retained by retail dealers or service companies, and it is very likely that such sales tax records can be used to identify Pool Product purchases and Class Members in each state during the Class Period.  Most business records are available in electronic format and data can be retrieved using software programs.

111.   Plaintiffs' claims are typical of the claims of the other Class Members in each State above.  Plaintiffs and Class Members in each State have all sustained damage in that during the Class Period, they indirectly purchased Pool Products from Defendants at artificially high prices, directly resulting from Defendants' unlawful conduct alleged herein.   Defendants' unlawful conduct, the effects of such violations, and the relief sought are all issues or questions that are common to Plaintiffs and Class Members in Arizona, California, Florida, and Missouri.

112.   Plaintiffs will fairly and adequately protect the interests of Class Members in Arizona, California, Florida, and Missouri and have retained counsel competent and experienced in class action antitrust and consumer protection litigation.

113.   Plaintiffs' interests are coincident with, and not antagonistic to, the interests of the other Class Members in Arizona, California, Florida, and Missouri.

114.   Common questions of law and fact exist as to all Class Members in each state above and predominate over any questions affecting solely individual Class Members in Arizona, California, Florida, and Missouri.

115.   The common questions of law and fact common to each Class in Arizona, California, Florida, and Missouri include, but are not limited to:

   (a)   whether the Pool Products Distribution Market in the United States is the relevant market and the geographic market in this case;

   (b)   whether Defendant PoolCorp attempted to possess monopoly power in the Pool Products Distribution Market in the United States during the Class Period;

   (c)   whether Defendant PoolCorp and the Manufacturer Defendants had unlawful vertical agreements and engaged in unfair practices in the United States during the Class Period;

(d)     whether Defendant PoolCorp's attempts to possess monopoly power in the Pool Products Distribution Market in the United States during the Class Period violated Ariz. Rev. Stat. §§ 44-1401, *et seq.*;

(e)     whether Defendant PoolCorp's and the Manufacturer Defendants had unlawful vertical agreements and engaged in unfair practices in the United States during the Class Period in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq.*;

(f)     whether Defendant PoolCorp's and the Manufacturer Defendants had unlawful vertical agreements and engaged in unfair practices in violation of the provisions of California Business & Professions Code § 16720, *et seq.*;

(g)     whether Defendant PoolCorp's and the Manufacturer Defendants had unlawful vertical agreements and engaged in unfair practices in violation of the provisions of California Business & Professions Code § 17200, *et seq.*;

(h)     whether the Defendant PoolCorp's and the Manufacturer Defendants had unlawful vertical agreements and engaged in unfair practices in violation of the provisions of the Florida Deceptive and Unfair Trade Practices Act, Fl. Stat. § 501.201, e*t seq.*, including § 501.204;

(i)     whether the Defendant PoolCorp's and the Manufacturer Defendants had unlawful vertical agreements and engaged in unfair practices in violation of the provisions of the Missouri Merchandising Practices Act, § 407.010, *et seq.*, including § 407.020;

(j)     whether, and to what extent, Defendant Pool Corp's and the Manufacturer Defendants' conduct caused Plaintiffs and Class Members in Arizona, California, Florida, and Missouri to pay artificially inflated prices for Pool Products, and thereby, suffer injuries; and

(k)     whether Plaintiffs and Class Members in Arizona, California, Florida, and Missouri are entitled to damages and, if so, the appropriate measure of damages.

116.    These and other questions of law and fact are common to Members of each Class in Arizona, California, Florida, and Missouri and predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

117.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all Class Members in Arizona, California, Florida, and Missouri is impracticable.  The prosecution of separate actions by individual Class Members would impose heavy burdens upon the courts and the Defendants, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class.  A class action, on the other hand, would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

118.    The interest of Class Members in Arizona, California, Florida, and Missouri in individually controlling the prosecution of separate actions is theoretical rather than practical. The Class has a high degree of cohesion, and prosecution of the action through a representative would be unobjectionable.  The amounts at stake for Class Members, while substantial in the aggregate, may not be great enough individually to enable them to maintain separate suits against the Defendant.  Plaintiffs do not anticipate any difficulty in the management of this action as a class action.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF STATE STATUTES

119.    Plaintiffs and Class Members hereby incorporate and re-allege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs in this Complaint.

a.    Defendant PoolCorp's and the Manufacturer Defendants' unlawful conduct and illegal vertical agreements had the following effects: (1) Pool Products' price competition was restrained, suppressed, and eliminated

throughout the United States; (2) Pool Products' prices were raised, fixed, maintained and stabilized at artificially high levels throughout the United States; (3) Plaintiff and Class Members in Arizona were deprived of free and open competition; (4) Plaintiff and Class Members indirectly paid for Pool Products from one or more of the Defendants during the Class Period in the State of Arizona; and (5) Plaintiff and Class Members paid supra-competitive, artificially inflated prices for Pool Products in the State of Arizona during the Class Period.

b.   During the Class Period, Defendant PoolCorp's and the Manufacturer Defendant's illegal vertical agreements and unfair practices substantially affected Arizona commerce.

c.   As a direct and proximate result of Defendants' unlawful conduct and illegal vertical agreements, Plaintiff and Class Members in Arizona have been injured in their business and property and are threatened with further injury.

d.   By reason of the foregoing, Defendant PoolCorp's unlawful attempt to acquire monopoly power, its unfair practices, and its illegal vertical agreements with the Manufacturer Defendants restrained trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq,* including § 44-1403.  Accordingly, Plaintiff and Class Members seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq.,* including § 44-1408(B).

123.     Plaintiffs and Class Members incorporate and re-allege each and every allegation set forth in the preceding paragraphs of this Complaint.

a.      Defendant PoolCorp's and the Manufacturer Defendants' unlawful conduct and illegal vertical agreements had the following effects: (1) Pool Products' price competition was restrained, suppressed, and eliminated in the United States; (2) Pool Products' prices were raised, fixed, maintained and stabilized at artificially high levels throughout the United States; (3) Plaintiff and Class Members in California were deprived of free and open competition; (4) Class Members indirectly paid for Pool Products from one or more of the Defendants during the Class Period in the State of California; and (5) Class Members paid supra-competitive, artificially inflated prices for Pool Products in the State of California.

b.      During the Class Period, Defendants' illegal conduct, their unfair practices, and their illegal vertical agreements substantially affected California commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct and agreements, Class Members in California have been injured in their business and property and are threatened with further injury.

d.      Defendants committed anticompetitive acts and had unlawful vertical agreements in violation of the Cartwright Act, Cal. Bus. & Prof. Code § 16720, *et seq.*

41

e.      Defendants commited acts of unfair competition, as defined by §§ 17200, *et seq.*, of the Cal. Bus. & Prof. Code. The acts and unfair practices of Defendants as alleged herein, constituted a common, continuous and continuing course of conduct of unfair competition, by means of unfair and unlawful acts or practices within the meaning of Cal. Bus. & Prof. Code, § 17200, *et seq.*, including but not limited to the following:

(i) violations of § 16720, *et seq.*, of the Cal. Bus. & Prof. Code, set forth above, thus constituting unlawful acts within the meaning of § 17200 of the Cal. Bus. & Prof. Code;

(ii) Defendants' conduct as described above, whether or not in violation of § 16720, *et seq.* of the Cal. Bus. & Prof. Code, and whether or not concerted or independent acts, are otherwise unfair practices or unlawful; and

(iii) Defendants' acts and practices were unfair to Plaintiff and Class Members who purchased Pool Products in the State of California, within the meaning of § 17200, Cal. Bus. & Prof. Code.

f.      The unlawful and unfair business practices of Defendants, and each of them, as described herein, caused Class Members to pay supra-competitive and artificially-inflated prices for Pool Products. They suffered injury in fact and lost money or property as a result of such unfair competition.

g.      As alleged herein, Defendants have been unjustly enriched as a result of their wrong conduct and by Defendants' unfair competition, Class Members in California, are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendants as a result of such business practices, pursuant to the Cal. Bus. & Prof. Code, §§ 17203 and 17204.

124.    Defendants' unlawful conduct consisted of a continuing agreements, understanding and concert of action between Defendants, the substantial terms of which were to engage in unlawful vertical agreements, and unfair practices in order to raise, maintain and stabilize the price of Pool Products throughout the United States, including in Arizona and California.

125.    For the purpose of formulating and effectuating the aforesaid unlawful conduct, Defendant Pool Corp and the Manufacturer Defendants did those things that they combined and agreed to do including, but not limited to, the acts, practices and course of conduct set forth above and the following, among others:

a.      Acting to exclude any new distributor entrant of Pool Products in the United States;

b.      Acting to charge prices at certain levels and otherwise to increase, maintain and/or stabilize prices of Pool Products sold in the United States, including in Arizona and California;

     c.     Entering into exclusive or otherwise restrictive dealing arrangements by which PoolCorp controlled the distributors to whom the Manufacturer Defendants sold their Pool Products in Arizona and California;

     d.     Deterring, delaying and impeding the ability of actual or potential competitors to enter or expand their sales in the Pool Products Distribution Market in the United States;

     e.     Acting to reduce the output of Pool Products in the United States;

     f.     Reducing consumer choice among competing Pool Product distributors in the United States; and

     g.     Misleading customers about the reasons for high prices and price increases of Pool Products in the United States, including Arizona and California.

126.     The activities described above were engaged in by Defendants for the purpose of effectuating their actions to exclude competitors and to raise and maintain the prices of Pool Products.

127.     Defendants' illegal conduct had the following effects, among others:

     a.     price competition in the sale of Pool Products has been restrained, suppressed, and/or eliminated throughout the United States;

     b.     Prices for Pool Products sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout the United States, including Arizona and California; and

     c.     Class Members who indirectly purchased Pool Products in Arizona and California from Defendants have been deprived of the benefits of free and open competition during the Class Period.

128.     During the Class Period, Plaintiffs and Class Members indirectly purchased Pool Products from Defendants in Arizona and California.  By reason of the violations alleged herein, Plaintiffs and Class Members have been injured in their business and property in that they paid more for their purchases of Pool Products than they would have in the absence of Defendants' illegal conduct. There is a traceable and direct causal link between the overcharge amounts charged by Defendants and the amounts Plaintiffs and Class Members paid for Pool Products. As a result, Plaintiffs and Class Members in Arizona and California have been injured and have suffered damages in an amount presently undetermined.

129.     Plaintiffs and Class Members have been injured in their business and property by reason of Defendants' unlawful conduct, agreements, and acts in furtherance thereof.  Plaintiffs and Class Members have paid more for Pool Products than they otherwise would have paid for them but for Defendants' illegal conduct.  The injury is of the type that the antitrust laws of Arizona and California and the Unfair Practices Act of California were designed to prevent and flows directly from Defendants' illegal conduct.  Accordingly, Plaintiffs and Class Members in Arizona and California who indirectly purchased Pool Products seek all appropriate relief as provided for by Arizona and California laws, including but not limited to damages, to be trebled or otherwise increased where permitted by Arizona's and California's antitrust laws, and equitable relief including restitution and/or disgorgement of all revenues, earnings profits, compensation and benefits which may have been obtained by Defendants pursuant to the Cal. Bus. & Prof. Code, §§ 17203 and 17204.

**COUNT II**
**VIOLATION OF FLORIDA AND MISSOURI**
**CONSUMER PROTECTION LAWS**

130.    Plaintiff and Class Members in Florida hereby incorporate and re-allege, as though fully set forth herein forth herein, each and every allegation set forth in the preceding paragraphs in this Complaint.

131.    Defendants engaged in unfair practices and unlawful vertical agreements in violation of the Florida Deceptive and Unfair Trade Practices Act, Fl. Stat. § 501.201, *et seq.*, including § 501.204:

a.      Defendants' unfair practices and unlawful vertical agreements were based upon a disparity of bargaining power between the Defendants and consumers in Florida.   Defendants' unlawful trade conduct affronted Plaintiff's and Class Members' sense of justice, decency, or reasonableness, and Defendants' trade conduct violated state public policy or statute, such as the Florida's antitrust provisions, and Federal Trade Commission Act provisions.   Defendants' unlawful unfair practices and unlawful vertical agreements had the following effects: (1) Pool Products' price competition was restrained, suppressed, eliminated throughout the State of Florida; (2) Pool Products' prices were raised, fixed, maintained and stabilized at artificially high levels throughout Florida; (3) Class Members were deprived of free and open competition; (4) Class Members indirectly paid more for Pool Products from one or more of the Defendants during the relevant period in the State of Florida; and (5) Class Members paid supra-competitive, artificially inflated prices for Pool Products in the State of Florida.

b.      During the relevant period, Defendants' unfair practices and unlawful vertical agreements substantially affected Florida commerce and consumers, including Class Members in Florida.

c.      As a direct and proximate result of Defendants' unlawful unfair practices and unlawful vertical agreements, Class Members have been injured in their business or property and threatened with further injury.

d.      Defendants have engaged in unfair practices and unlawful vertical agreements in violation of Florida Deceptive and Unfair Trade Practices Act, Fl. Stat. § 501.201, *et seq.*, including § 501.204, and accordingly, Class Members seek all relief available under that statute, including Fla. Stat. §501.211(2).

132.    Plaintiff and Class Members hereby incorporate and re-allege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

(a)     Plaintiff and Class Members purchased Pool Products in Missouri for their own personal, family, or household use or purpose, and not for resale, during the Class Period;

(b)     Defendants engaged in unfair practices and unlawful vertical agreements described herein in connection with the sale of Pool Products in trade or commerce in the State of Missouri. Plaintiff and Class Members were injured by Defendants when they purchased Pool Products indirectly from Defendants through the retail or swimming pool service market;

(c)     The unfair practices committed by Defendants included their agreements and understanding to: (1) restrict the distribution of Pool Products in the United States; and (2) inflate, control and/or maintain at artificially high

levels the prices at which Pool Products were sold, distributed, or purchased in the United States, including Missouri. Defendants agreed to and did in fact inflate, affect, control, and/or maintain, at artificial and non-competitive levels the prices at which Pool Products were distributed, sold or obtained in the United States, including Missouri, which conduct constituted an unfair practice in that it was unlawful under state law, violated public policy, and caused substantial injury to Plaintiff and Class Members who purchased Pool Products in Missouri;

(d)      Defendants engaged in the act, use, and employment of unfair practices in connection with the offering for sale and sale of merchandise to direct and indirect purchasers, such as Plaintiff and Class Members, in trade and commerce in the State of Missouri in violation of § 407.100, to-wit:

(i)      Engaging in unfair practices as defined by 15 CSR 60-8.020(1) by having restrictive vertical dealing arrangements between PoolCorp and the Manufacturer Defendants by which PoolCorp controlled the distributors to whom the Manufacturer Defendants sold their Pool Products in the United States, and to inflate the prices of Pool Products, which agreements offend public policy as it has been established by the Missouri Antitrust Act, § 416.031.1, and further violates which agreements are unethical, oppressive, and unscrupulous and caused substantial injury to direct and indirect

48

purchasers of Pool Products, such as Plaintiff and Class Members, as the State of Missouri's antitrust laws are intended to protect the public against higher prices and limited supplies caused by agreements to restrain competition; and

(ii)    Engaging in an unfair practice as defined by the Missouri Attorney General as "any practice which . . . [o]ffends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretative decisions; or . . . [i]s unethical, oppressive, or unscrupulous; and . . . [p]resents a risk of, or causes, substantial injury to consumers." 15 CSR § 60-8.02; and

(iii)    Engaging in unfair practices as defined by 15 CSR 60-8.040 and 15 CSR 60-8.010 by violating the duty of good faith by failing to adhere to honesty in fact and observing reasonable commercial standards of fair dealing in connection with the sale of Pool Products to direct and indirect purchasers of Pool Products within the State of Missouri, such as Plaintiff and Class Members;

(e)    Defendants' conduct was unconscionable in that it took advantage of unequal bargaining positions and obtained pricing terms reflecting a gross disparity of values exchanged, all of which resulted in the payment of substantially higher prices for Pool Products by direct and indirect purchasers, such as Plaintiff and Class Members;

(f)     Defendants' unlawful conduct had the following effects: (1) Pool Product price competition was restrained, suppressed, and eliminated in the United States, including Missouri; (2) Pool Product prices were raised, fixed, maintained, and stabilized at artificially high levels in the United States, including Missouri; (3) Plaintiff and Class Members were deprived of the benefits of free and open market competition; and (4) Plaintiff and Class Members paid artificially inflated prices for Pool Products;

(g)     The foregoing acts and practices constituted unfair and unlawful practices in violation of the Missouri Merchandising   Practices Act;

(h)     As a direct and proximate result of the above-described unlawful practices, Plaintiff and Class Members suffered ascertainable loss of money due to purchasing Pool Products indirectly from Defendants. There is a traceable and direct causal link between  Defendants' unlawful conduct and overcharges paid for Pool Products by Plaintiff and Class Members; and

(i)      Plaintiff and Class Members assert a claim for actual damages, punitive damages, recovery of reasonable attorneys' fees, and other relief under Missouri's Merchandising Practices Act, specifically section 407.020 R.S.Mo., which prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any

merchandise in trade or commerce" as further interpreted by the Missouri

Code of State Regulations, 15 CSR § 60-7.010, *et seq.*, 15 CSR § 60-

8.010, *et seq.*, and 15 CSR 60-9.010, *et seq.*, and § 407.025 R.S.Mo.,

which provides for the relief sought in this Count.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and Class Members in Arizona, California, Florida, and

Missouri pray for relief as follows:

A      Certification of a Arizona Class, a California Class, a Florida Class, and a

Missouri Class as defined in this Complaint pursuant to Federal Rules of Civil

Procedure Rule 23(a) and (b)(3), and designating the respective Plaintiffs who are

citizens of those States as separate Class Representatives for Arizona, California,

Florida, and Missouri Classes;

B.     That Defendants by their illegal conduct to raise and maintain the prices of Pool

Products as alleged herein be adjudged and decreed to have violated the antitrust

provisions as alleged in Count I of under Ariz. Rev. Stat. §§ 44-1401, *et seq.*,

including § 44-1403, and be adjudged and decreed to have violated Cal. Bus. &

Prof. Code § 16720, *et seq.*, and § 17200 *et seq.*;

C.     That Plaintiff and Class Members in Arizona recover treble damages or other

damages permitted by statute,  and costs of suit, including reasonable attorneys'

fees, as provided by Arizona state law recovery provisions, including costs of suit

and reasonable attorneys' fees, as provided by Ariz. Rev. Stat. § 44-1408(B) for

flagrant violations, and that Plaintiff and Class Members in California be awarded

restitution, including disgorgement of profits obtained by Defendants as a result of their acts of unjust enrichment, or any acts in violation of state consumer protection laws, including § 16750, *et seq.*, and § 17200 *et seq.* of the Cal. Bus. & Prof. Code, as set forth in Count I;

D.     That Defendants by their unlawful conduct to raise, and maintain the prices of Pool Products in the United States as alleged herein be adjudged and decreed to have violated the consumer protection provisions as alleged in Count II under  the laws of  Florida;

E.     That Class Members  in Florida recover damages permitted by statute,  and costs of suit, including reasonable attorneys' fees, as provided by Florida state law recovery provisions set forth in Count II,  and  that a joint and several judgment be entered in favor of Class Members in Florida against Defendants in an amount provided by of Florida Deceptive and Unfair Trade Practices Act, Fl. Stat. § 501.201, *et seq.*, including § 501.204, and accordingly, Class Members in Florida seek all relief available under that statute, including Fla. Stat. § 501.211(2);

F.     That Defendants' conduct of  (i) controlling the distribution of Pool Products and thereby artificially inflating prices for Pool Products by using methods, acts, and unfair practices that had the tendency or capacity to mislead or cheat Plaintiff and Class Members in Missouri, or that tended to create false impressions as to the value, pricing, and cost of Pool Products; (ii) Defendants' misrepresentations, concealment, suppression, and omission of material facts; and (iii) Defendants' participation in unfair practices by way of conspiracy to control the distribution of Pool Products in the United States, thereby artificially inflating prices for Pool

52

Products, be adjudged and decreed to have violated the Missouri Merchandising

Practices Act and be found to violate Missouri public policy as alleged in Count

II;

G.      That Defendants be found and ordered to pay to Plaintiffs and Class Members in

Missouri damages for their violations as permitted by the Missouri Merchandising

Practices Act, as alleged in Count II;

H.       That Plaintiffs and Class Members in Missouri recover their costs of the suit,

including attorneys' fees, as provided by law; and

I.      That Plaintiffs in Arizona, California, Florida, and Missouri have such other,

further, and different relief as the case may require and the Court may deem just

and proper under the circumstances under Counts I and II above.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs in Arizona,

California, Florida, and Missouri respectively demands a trial by jury on all issues so triable.

Dated:  July 9, 2012                              Respectfully submitted,


By: /s/ Thomas J. H. Brill
Thomas J.H. Brill  (MO 36874)
Law Office of Thomas H. Brill
8012 State Line Road, Suite 102
Leawood, Kansas 66208
Telephone: 913/ 677-2004
E-Mail: brillkc@gmail.com

**Indirect Purchaser Plaintiffs' Liaison
Counsel**

Gerald E. Meunier, #9471
Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Center, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:  504/522-2304
Facsimile:    504/528-9973
E-Mail:  gmeunier@gainsben.com

John F. Edgar          (MO 47128)
Edgar Law Firm LLC
1032 Pennsylvania Avenue
Kansas City, Missouri 64105
Telephone: 816/531-0033
E-Mail: jfe@edgarlawfirm.com

Isaac L. Diel          (MO 39503)
Sharp McQueen PA
6900 College Blvd. Suite 285
Overland     Park,     Kansas     22211-1547
Telephone:                    913/661-9931
E-Mail:  idiel@sharpmcqueen.com

Michael  Brady              (KS  18630)
Brady & Associates
10901       Lowell,       Suite       280
Overland   Park,   Kansas   66210   (913)
Telephone: 913/ 696-0925
E-mail: brady@mbradylaw.com