```
                     UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA
```

                                              MDL No. 2328

IN RE: POOL PRODUCTS
DISTRIBUTION MARKET ANTITRUST                 SECTION: R(2)
LITIGATION

                                              JUDGE VANCE
                                              MAG. JUDGE
                                              WILKINSON


**THIS DOCUMENT RELATES TO ALL CASES**


<u>**ORDER AND REASONS**</u>

In the parties' Joint Report[1] identifying issues to be discussed at the August 14, 2014 status conference, Direct-Purchaser Plaintiffs' ("DPPs") requested that the Court revisit its previous Order concerning the supplemental report submitted by DPPs' economics expert, Dr. Gordon Rausser. For the following reasons, the Court GRANTS DPPs' request.

**I. BACKGROUND**

The Court issued Pretrial Order No. 20 ("PTO #20") in this case on October 21, 2013.[2] PTO #20 provided that the parties would simultaneously exchange their expert reports on April 10, 2014, and simultaneously exchange their reply expert reports on

---

[1]  R. Doc. 441.

[2]  R. Doc. 334.

June 10, 2014.[3] In addition, Magistrate Judge Wilkinson issued an Order in this case on April 23, 2014, setting July 10 and 11, 2014 for the deposition of DPPs' expert Dr. Rausser.[4] The parties exchanged reports and reply reports in accordance with the schedule set out in PTO #20.

On Monday, July 7, 2014, defendants filed a motion contending that they had just received a new reply report issued by Dr. Rausser, over three weeks after the deadline for reply reports and only three days before his scheduled deposition.[5] In their motion, defendants asked the Court to strike Dr. Rausser's supplemental report because it was produced after the deadline for expert reports set forth in PTO #20. They also argued that the new report employed new methodology and reached new conclusions in multiple instances. They contended that if permitted, the new report would require their experts to conduct an entirely new analysis, and that they would need an additional day to depose Dr. Rausser after their experts had completed their new review and analysis. They suggested that the new analysis would take at least several weeks.

In response to defendants' motion to strike, DPPs claimed that the supplemental report sought only to "correct a

---

[3] *See id.*

[4] R. Doc. 411.

[5] R. Doc. 425.

misunderstanding regarding PoolCorp's pricing data" and to make "minor refinements" or "adjustments" in response to critiques from defendants' experts' reply reports.

In an Order issued July 9, 2014, the Court analyzed the arguments for and against permitting the new report under *Geiserman v. MacDonald*, 893 F.2d 787 (5th Cir. 1990), which sets forth four factors that a court should consider when exercising its discretion to permit or exclude evidence produced by a party in violation of a scheduling order. Based on the information before the Court at the time, the Court determined that the *Geiserman* factors weighed in favor of not permitting use of the report.[6] Accordingly, the Court issued an Order prohibiting DPPs from introducing the untimely supplemental report into evidence.[7]

On August 7, 2014, one week before the regular status conference, DPPs asked the Court either to revisit its decision about the supplemental report or permit DPPs to submit a limited declaration from Dr. Rausser setting forth some of the conclusions from the report. The Court asked the parties to submit Dr. Rausser's original reports, defendants' experts reply reports, and Dr. Rausser's supplemental report for the Court's *in camera* review. The parties did so. Now, having studied these reports, and having heard from counsel on both sides during the

---

[6]   R. Doc.

[7]   *See id.*

status conference, the Court revisits its decision regarding the supplemental report.

## II. DISCUSSION

Federal Rule of Civil Procedure 16(b) authorizes district courts to control and expedite the discovery process through a scheduling order. *See* Fed. R. Civ. P. 16(b). Consistent with this authority, the Court has "broad discretion" to enforce its scheduling order. *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990). The Federal Rules of Civil Procedure specifically authorize the Court to sanction a party for failing to comply with its scheduling order by excluding evidence. *See* Fed. R. Civ. P. 16(f), 37(b)(2).

In *Geiserman*, the Fifth Circuit listed four factors that a court should consider in exercising its discretion to exclude evidence that is not produced in accordance with a court's order: (1) a party's explanation for its failure to produce the evidence; (2) the importance of the proposed evidence; (3) potential prejudice in allowing the admission of the evidence; and (4) the availability of a continuance to cure such prejudice. *Geiserman*, 893 F.3d at 791; *see also Betzel v. State Farm Lloyds*, 480 F.3d 704, 707 (5th Cir. 2007). "[A] trial court's decision to exclude evidence as a means of enforcing a pretrial order 'must not be disturbed' absent a clear abuse of discretion." *Geiserman*, 893 F.3d at 790 (quoting *Davis v. Duplantis*, 448 F.2d 918, 921

(5th Cir. 1971)). The Court now revises its analysis of the supplemental report under the *Geiserman* factors in light of the new information available to the Court to since its July 9, 2014 Order, in particular the full drafts of all the relevant expert reports.

With regard to the first *Geiserman* factor, DPPs' best explanation for their failure to produce Dr. Rausser's supplemental report in accordance with the schedule set out in PTO #20 is that he did not realize he had misinterpreted PoolCorp's pricing and unit-of-measure data until after he reviewed defendants' experts' reply reports, which he received June 10, 2014. As the Court learned through its independent review of the various reports, making the necessary pricing and unit-of-measure corrections led to "coefficients on the supply and demand variables . . . included in [Dr. Rausser's] regression model [with] signs . . . inconsistent with economic expectations."[8] In other words, once he made the necessary corrections to the data, Dr. Rausser's model behaved in a way that was inconsistent with what would be expected under traditional economic theory. As a result, in his supplemental report, Dr. Rausser seeks not only to correct for his data

---

[8] Supplemental Expert Report of Gordon Rausser, Ph.D., at 5.

misinterpretation, but also to make various adjustments to his model to make the regression more precise.

As to the first factor, the Court underscores that DPPs mishandled this unfortunate situation from the start. When Dr. Rausser recognized his misunderstanding and, more importantly, the significant impact the mistake had on his model and analysis (presumably in early June), DPPs should have immediately come forward and explained both the misunderstanding and the resulting need for Dr. Rausser to adjust his work and requested leave of Court to correct it. They did not do so. Instead, DPPs kept silent while Dr. Rausser tinkered with his model throughout the end of June and the beginning of July. They then dropped the supplemental report on defendants the week of Dr. Rausser's scheduled deposition. Following defendants' understandable objection, DPPs downplayed the actual extent of the revisions made by Dr. Rausser in the new report. Far from helping DPPs, these disappointing obfuscations undermined their credibility and obscured the best reason for permitting the report. Had DPPs explained why the report was so important from the beginning, they might have saved the Court and all parties involved the two months that have elapsed since Dr. Rausser apparently first recognized his errors.

Nevertheless, the Court recognizes that economic modeling involves some degree of trial and error. The Court concludes that

had Dr. Rausser utilized Pool's pricing and unit-of-measure data correctly from the start, he almost certainly would have noticed the problems with the coefficients in his model and made appropriate adjustments at the time he developed his original report. Accordingly, Dr. Rausser's persistent misunderstanding of the PoolCorp data explains most of why he did not begin to make the adjustments at issue until after the deadlines set out in PTO #20. On the one hand, the Court finds this explanation for the late production of Dr. Rausser's new analysis persuasive. On the other hand, as discussed above, DPPs never squarely presented this explanation to the Court. Thus, the Court finds that the first *Geiserman* factor -- a party's explanation for its failure to produce the evidence -- is neutral, neither in favor of or against permitting the late supplemental report.

As to the second *Geiserman* factor, it is clear from the Court's review of the reports that the evidence in question is important to plaintiffs' case. DPPs will rely on Dr. Rausser to establish that a uniform overcharge applied across PoolCorp's customers. Dr. Rausser's errors go to the heart of this issue, and their correction results in his having to reduce his estimate of the overcharge by almost one-half and making other significant adjustments to his model. Because a corrected analysis is critical to DPPs' attempt to establish a crucial element of private antitrust liability -- impact -- on a class-wide basis,

*see State of Ala. v. Blue Bird Body Co., Inc.*, 573 F.2d 309, 320 (5th Cir. 1978), the second *Geiserman* factor weighs strongly in favor of permitting the supplemental report.

The third *Geiserman* factor examines the potential prejudice involved in permitting DPPs to submit the report. To their credit, defendants admit that they are not substantively prejudiced by the report, but they assert that they are subject to prejudice in terms of time and money. Defendants assert that to respond adequately to the new report, they will need (1) an additional two months for their experts to analyze the report and provide a written critique; (2) an additional day to depose Dr. Rausser about the contents of the new report after their experts have had time to complete their analyses; and (3) reimbursement for the substantial attorneys' fees and expert expenses involved in responding to the new report. Accordingly, the Court deems it appropriate to consider the third *Geiserman* factor in light of the fourth *Geiserman* factor, which assesses the availability of a continuance to cure any prejudice.

The Court finds that a continuance in the briefing schedule for summary judgment, class certification, and *Daubert* motions is sufficient to cure any prejudice the new report might otherwise cause defendants with regard to time. As provided in Pretrial Order No. 29, defendants shall have two additional months for their experts to review the new report and submit a written

critique.[9] DPPs shall also make Dr. Rausser available for an additional day of deposition, to take place during the two-week period immediately following the close of the sixty days given to defendants to complete their new analysis. Finally, the parties shall submit to the Court a revised briefing schedule that accounts for the interruption necessitated by the supplemental report and the redeposition of Dr. Rausser. The Court will issue a new Pretrial Order setting forth the revised briefing schedule after hearing from the parties next week.

As to costs, the Court finds that the prejudice to defendants can be cured by shifting the attorneys' fees and expenses associated with the new expert analyses and the redeposition of Dr. Rausser to plaintiffs. Accordingly, the Court has also ordered that defendants provide the Court with a good faith estimate of those expenses, strictly limited to those associated with defendants' response to Dr. Rausser's supplemental report and Dr. Rausser's redeposition, no later than August 22,2014. Since all potential prejudice to defendants can be cured by these adjustments, the third and fourth factors weigh in favor of permitting the reports.

The first *Geiserman* factor is neutral. The second factor weighs in favor of permitting the report. Finally, the third and fourth factors, viewed in combination, weigh in favor of

---

[9]    R. Doc. 458.

permitting the report. Accordingly, the Court grants DPPs leave to submit Dr. Rausser's supplemental report, subject to the conditions set out above.

New Orleans, Louisiana, this 22nd day of August, 2014.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE