UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: POOL PRODUCTS
DISTRIBUTION MARKET ANTITRUST
LITIGATION

MDL NO. 2328

SECTION: R(2)

JUDGE VANCE
MAG. JUDGE WILKSON

**THIS DOCUMENT RELATES TO ALL DIRECT-PURCHASER PLAINTIFF CASES**

# ORDER AND REASONS

Defendants Pool Corporation, SCP Distributors LLC, and Superior Pool Products (collectively, "Pool"), move for summary judgment on Direct Purchaser Plaintiffs' (DPPs') vertical conspiracy claims, as well as Indirect Purchaser Plaintiffs (IPPs') analogous state-law claims.[1] DPPs have alleged that Pool maintained an unlawful vertical agreement with each Manufacturer Defendant—Hayward Industries, Inc., Pentair Water Pool and

---

[1] R. Doc. 504 (Motion for Summary Judgment on Claim of Vertical Conspiracy Between Pool and Hayward); R. Doc. 506 (Motion for Summary Judgment on Claim of Vertical Conspiracy Between Pool and Zodiac); R. Doc. 517 (Motion for Summary Judgment on Claim of Vertical Conspiracy Between Pool and Pentair).

Spa, Inc., and Zodiac Pool Systems, Inc. For the following reasons, the Court grants the motion.

## I.   BACKGROUND

This is an antitrust case that direct-purchaser plaintiffs (DPPs) and indirect-purchaser plaintiffs (IPPs) filed against Pool and the Manufacturer Defendants. Pool is the country's largest distributor of products used for the construction and maintenance of swimming pools (Pool Products).[2] The Manufacturer Defendants are the three largest manufacturers of Pool Products in the United States: Hayward, Zodiac, and Pentair.[3] As defined in DPPs' Second Consolidated Amended Class Action Complaint and IPPs' Third Amended Class Action Complaint, Pool Products are the equipment, products, parts, and materials used for the construction, renovation, maintenance, repair, and service of residential and commercial swimming pools. Pool Products include pumps, filters, covers, drains, fittings, rails, diving boards, and chemicals, among other goods. Pool buys Pool Products from manufacturers, including the three the Manufacturer Defendants, and in turn sells them to DPPs, which include pool builders, pool retail stores,

---

[2]   R. Doc. 284, ¶ 39.

[3]   *Id.* ¶ 28.

and pool service and repair companies (collectively referred to as "Dealers").[4] IPPs are pool owners who indirectly purchased Pool Products manufactured by the Manufacturer Defendants and distributed by Pool.[5]

DPPs filed two consolidated amended complaints—the first on June 29, 2012[6] and the second on June 21, 2013[7]—each of which defendants moved to dismiss. Following the Court's orders on those motions, DPPs were left with the following five claims: (1) a Section 1 claim under the *per se* rule involving a horizontal agreement between the Manufacturer Defendants and Pool to fix free freight minimums; (2) three Section 1 claims under the rule of reason involving three separate vertical conspiracies (one between Pool and each Manufacturer Defendant) to exclude Pool's competitors; and (3) a Section 2 attempted monopolization claim against Pool.[8] Pool has moved for summary judgment on these five claims. In addition, DPPs have moved for class certification. Both Pool and DPPs have also moved in limine to exclude the opposing party's experts.

---

[4]   *Id.* ¶ 31.

[5]   *See* R. Doc. 290.

[6]   R. Doc. 107.

[7]   R. Doc. 284.

[8]   *See generally* R. Doc. 250.

The Court dismissed DPPs' Section 1 horizontal conspiracy claim on summary judgment.[9] The Court also excluded in part the testimony of DPPs' expert, Dr. Gordon Rausser.[10] Specifically, the Court excluded Dr. Rausser's aggregated causation analysis to demonstrate the supposed anticompetitive effects of Pool's alleged vertical conspiracies with each Manufacturer Defendant.[11]

IPPs initially alleged that the conduct of Pool and the Manufacturer Defendants violated various antitrust and deceptive trade practices laws of California, Arizona, Florida, and Missouri. Specifically, IPPs alleged violations of California's antitrust law, the Cartwright Act, Cal. Bus. & Prof. Code § 16720, *et seq.*; the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*; the state antitrust provisions of Ariz. Rev. Stat. §§ 44–1401, *et seq.*; the consumer protection provisions of the Florida Deceptive and Unfair Trade Practices Act, Fl. Stat. §§ 501.201, *et seq.*, including § 501.204; and the consumer protection provisions of the Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010, *et seq.*[12] IPPs based their claims on

---

[9] R. Doc. 700.

[10] R. Doc. 701.

[11] *Id.* at 53-59.

[12] R. Doc. 149 at 2 (Second Amended Class Action Complaint).

allegations of the same underlying conduct that DPPs alleged in their Sherman Act claims.

On May 24, 2013, the Court dismissed IPPs' claims under the California Unfair Competition Law, Florida Deceptive and Unfair Trade Practices Act, and Missouri Merchandising Practice Act that were based on the theory that defendants engaged in fraud or misrepresentation. The Court also dismissed IPPs' illegal group boycott claim under the Cartwright Act because IPPs failed to allege a horizontal agreement.[13] IPPs were left with the following claims: California Unfair Competition Law and rule of reason Cartwright Act claims involving three vertical conspiracies (one between Pool and each Manufacturer Defendant); Arizona Antitrust Act claims involving three vertical conspiracies and a claim of attempted monopolization against Pool; Florida Deceptive and Unfair Trade Practices Act claims involving three vertical conspiracies and a claim of attempted monopolization against Pool; and Missouri Merchandising Practice Acts claims based on defendants' alleged anticompetitive agreements to exclude Pool's rivals and Pool's attempted monopolization.[14]

---

[13]   R. Doc. 250 at 19-20.

[14]   *Id.* at 21- 30, 35.

The Court now analyzes whether plaintiffs have sufficient evidence to proceed on their vertical conspiracy claims.

## II.  LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

## III. DISCUSSION

### A. DPPs' Sherman Act Claims

Liability in a private antitrust action requires the plaintiff to prove that the defendants violated the antitrust laws, that the violation injured the plaintiff's business or property, and that the plaintiff has some indication of the amount of damage done. *See El Aguila Food Prods., Inc. v. Gruma Corp.*, 131 F. App'x 450, 452 (5th Cir. 2005); *Kestenbaum v. Falstaff Brewing Corp.*, 514 F.2d 690, 694 (5th Cir. 1975).

Here, DPPs allege that Pool has violated Section 1 of the Sherman Act through three vertical agreements (one with each Manufacturer Defendant) "to restrict rivals' access to supply from the Manufacturer Defendants and to foreclose rivals from selling to PoolCorp's customers."[15]

Section 1 of the Sherman Act forbids every contract, combination, or conspiracy that unreasonably restrains trade. *See* 15 U.S.C. §1; *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 133 (1998). Courts test the unreasonableness, and thus the illegality, of a vertical restraint by the rule of reason. *Leegin Creative Leather Prods, Inc. v. PSKS, Inc.*, 551 U.S. 877 (2007). Under the rule of reason, whether a challenged restraint

---

[15] R. Doc. 584 at 1.

"unreasonably restrains trade" refers to whether it caused an "injury to competition." *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 417 (5th Cir. 2010) (quoting *Doctor's Hosp., Inc. v. Se. Med. Alliance, Inc.*, 123 F.3d 301, 307 (5th Cir. 1997)). Courts must balance

> the anticompetitive evils of a restrictive practice . . . against any procompetitive benefits or justifications within the confines of the relevant market. Proof that the defendant's activities, on balance, adversely affected competition in the appropriate product and geographic markets is essential to recovery under the rule of reason.

*Doctor's Hosp.,* 123 F.3d at 307 (citing *Hornsby Oil Co. v. Champion Spark Plug Co.*, 714 F.2d 1384, 1392 (5th Cir. 1983)). When assessing the effect on competition of a vertical conspiracy in a case that includes multiple "discrete conspiracies," a court must evaluate each alleged agreement individually:

> [E]ach . . . agreement must be treated as a separate conspiracy, and only acts taken in furtherance of that alleged conspiracy are appropriately considered in determining the adverse effects of the claimed restraints on trade, not acts of one conspirator taken in furtherance of other possible, distinct conspiracies. . . . Indeed, to hold otherwise would be to suggest that the distinction between a single conspiracy and multiple conspiracies involving a common defendant is one without a difference.

*Dickson v. Microsoft Corp.*, 309 F.3d 193, 210-11 (4th Cir. 2002) (citations omitted). If, on balance, the challenged conduct in furtherance of a particular agreement injures competition, then that agreement violates Section 1; if not, then not.

In support of summary judgment on each of DPPs' vertical conspiracy claims, Pool argues that DPPs cannot show that any of Pool's alleged agreements with Hayward, Zodiac, or Pentair injured competition and therefore cannot show that an antitrust violation occurred.

DPPs depend on Dr. Rausser's aggregated causation analysis to prove that the three alleged vertical conspiracies had an anticompetitive effect on the relevant market.  DPPs ask the Court to consider Pool's separate vertical agreements with each Manufacturer Defendant collectively in analyzing the competitive effects. DPPs also ask the Court to consider Pool and the Manufacturer Defendants' alleged horizontal agreement, a claim the Court has since dismissed on summary judgment for lack of evidence of horizontal collusion.

According to DPPs, "[t]he[] restraints operated collectively and . . . collectively gave rise to the reduction in competition and the artificial elevation in prices . . . ."[16]  But the Court has excluded Dr. Rausser's aggregate causation analysis in aid of DPPs' vertical conspiracy claims, finding that it did not fit the legal standard applicable to a vertical conspiracy claim.  This standard tasks the Court with separately considering the competitive effect

---

[16]     *Id.* at 56.

of each alleged conspiracy, rather than the aggregate effect of all allegedly unlawful conduct, as Dr. Rausser has done.

The cases on which DPPs rely in urging the Court to consider the aggregate effect of all alleged conspiracies are distinguishable. In those cases, the courts considered the effect of various conduct taken in furtherance of a single conspiracy, not the combined competitive effect of multiple alleged conspiracies to prove that any one conspiracy, on its own, was anticompetitive. *See, e.g.*, *Cont'l Ore v. Union Carbide & Carbon Corp.*, 370 U.S. 690 (1962) (single conspiracy to monopolize claim); *LePage's Inc. v. 3M*, 324 F.3d 141 (3d Cir. 2003); *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651 (7th Cir. 2002) (single horizontal conspiracy claim); *Taylor Publishing Co. v. Jostens, Inc.*, 216 F.3d 465 (5th Cir. 2000) (single attempted monopolization claim); *Southway Theatres, Inc. v. Georgia Theatre Co.*, 672 F.2d 485 (5th Cir. 1982) (single horizontal conspiracy claim); *Associated Radio Serv. Co. v. Page Airways, Inc.*, 624 F.2d 1342 (5th Cir. 1980) (single attempted monopolization claim).

DPPs' reliance on exclusive dealing cases, like *Standard Fashion Co. v. Magrane-Houston Co.*, 258 U.S. 346 (1922) and *Standard Oil Co. v. United States* (*Standard Stations*), 337 U.S. 293 (1949), and horizontal boycott cases, like *Toys "R" Us, Inc. v. FTC*, 221 F.3d 928 (7th Cir. 2000), is also

misplaced.  First, as the Court explained in its order partially excluding the opinion of Dr. Rausser, the Court dismissed DPPs' boycott claim on the pleadings and granted summary judgment on DPPs' horizontal price-fixing claim for lack of evidence of horizontal collusion.  DPPs' continued arguments on the issue do not preclude summary judgment.  Moreover, because this case does not involve exclusive dealing agreements, cases detailing how these agreements may be anticompetitive are unhelpful.  It is undisputed that Pool did not maintain an exclusive distributorship with any Manufacturer Defendant.  Pool's preferred vendor program required that vendors conduct $2 million worth of business with Pool, while manufacturers could and did do business with other distributors.  DPPs' own expert Dr. Rausser confirms that the three Manufacturer Defendants conducted the majority of their business with entities other than Pool.[17]

Without evidence that any of the alleged vertical conspiracies injured competition, DPPs cannot prove the antitrust violation necessary to sustain their vertical conspiracy claims.

---

[17]  Rausser Initial Report, April 10, 2014, at 40-42.

## B.     IPPs' State-Law Claims

Pool argues that IPPs state-law vertical conspiracy claims "suffer from the same deficiencies [and] legal insufficienc[ies]" as DPPs' Sherman Act claims.[18]  It is undisputed that IPPs rely on the aggregated effects of Pool's conduct with all three Manufacturer Defendants to establish injury to competition, which allegedly resulted in supra-competitive prices for Pool Products.  Thus, IPPs' vertical conspiracy claims are likewise subject to summary judgment.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Pool's motions for summary judgment on plaintiffs' claims of vertical conspiracies between Pool and Hayward, Pool and Zodiac, and Pool and Pentair.

New Orleans, Louisiana, this 29th day of April, 2016.

_____

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[18]     *See, e.g.*, 506-4 at 32.